## STATE OF IOWA;

DES MOINES, DECEMBER TERM, A. D. 1865.

IN THE TWENTIETH YEAR OF THE STATE.

PRESENT:

Hon. GEORGE G. WRIGHT, Chief Justice.
 " RALPH P. LOWE,
 " JOHN F. DILLON, } Judges.
 " CHESTER C. COLE,

LOWE v. GRINNAN *et al.*

1. **Deed of trust: SALE.** A sale of real estate, in accordance with the terms of the power contained in a deed of trust, without a proceeding in foreclosure, is valid, and in the absence of extrinsic equities, concludes the equities of subsequent incumbrancer.

2. —— REBELLION. The disloyal and treasonable acts of the purchaser of property, sold in accordance with the terms of a deed of trust, after such sale, cannot operate to invalidate the sale and let a subsequent incumbrancer, whose equities were barred thereby, in to redeem against such deed.

Vol. XIX.—25

*Appeal from Lee District Court.*

THURSDAY, OCTOBER 5.

By the plaintiff's petition it appears that one D. A. Day, to secure him a certain sum of money, on the 3d of May, 1859, made his mortgage on two lots in the city of Keokuk, and that on the 11th of February, 1861, he obtained a judgment at law for the sum thus due, amounting to $1,821,25, and that Day is insolvent. On the 6th of April, 1858, Day executed to P. S. Lomax, Esq., a deed of trust· to secure a large sum of money to the defendants, C. and D. M. Grinnan, on the same property, which deed was foreclosed by due notice and sale, and the property purchased by the beneficiaries, who entered into the possession and are receiving the rents and profits thereof. It is alleged that plaintiff had no actual notice of said trust deed, and that the acknowledgment was so defective that the recording of said deed did not impart constructive notice of its contents. But if not thus defective, it is then averred that said Grinnans are residents of Orange county, Virginia, and "are and have been engaged in the present rebellion, giving aid and comfort thereto, and as such have forfeited all their right and title to said property to the government of the United States, according to the provisions of an act of congress, approved July 17, 1862, entitled 'An act to suppress insurrections; to punish treason and rebellion; to seize and confiscate the property of rebels, and for other purposes.'"

He then claims that he has a right, as against the said Grinnans, to redeem said property without paying the redemption money to them, leaving for the determination of the federal courts, the question whether he shall redeem from the government. The prayer is, for the appointment of a receiver, for a foreclosure of the mortgage, to redeem

from the trust deed, withholding for the time being the redemption money from the Grinnans, subject to the right of the government under the confiscation act aforesaid, to be hereafter determined, and for such other and further relief, &c.

The Grinnans answer, setting up their trust deed and the sale to them by the trustee on the 19th of November, 1859, denying the defectiveness of the acknowledgment, but aver that the recording of the same imparted full notice, and that plaintiff had actual notice thereof. They also, while admitting their residence as charged in the petition, state that they are women, and therefore non-combatants; " deny that they ever engaged in the present rebellion, or that they are giving aid and comfort thereto;" deny that they have in any way forfeited their right and title to said property to the government of the United States, under the act of congress of July 17, 1862, as also the plaintiffs' right to redeem.

One Peter Cowse filed his petitition as intervenor, based upon the following allegations: In February, 1862, he was a resident of Spottsylvania county, Virginia, and was then and there seized and possessed of a valuable farm; that he was a Union man, and opposed to the so called Southern Confederacy; that he declined to take any part in the rebellion, and was continually exposed to threats of violence and injury; that he determined to sell his farm and seek safety without the jurisdiction of the so called Southern Confederacy; that to this end, in the same month, he exchanged his farm with the Grinnans for the said lots in Keokuk, and took a deed therefor in his own name; that in March, 1862, he was arrested by a military force, and confined in Libby prison, where he remained until exchanged in September, when he made his way to his friends in the State of Pennsylvania, where he has resided

ever since. He asks to be allowed to intervene and to be quieted in his title.

Plaintiff demurred to the petition of Cowse, and moved to strike the answer of the defendants (Grinnans), and being overruled, excepted and appeals. A motion to discharge the receiver was overruled, and from this order Cowse appeals.

*R. H. Gilmore* and *Withrow & Smith* for the plaintiff.

*John. N. Rogers* for the defendant.

WRIGHT, Ch. J. — While counsel have occupied a wide field in the discussion of this case, in our view the determination of one question settles the entire controversy, and renders the examination of all others quite immaterial.

In the petition it is suggested that the deed of trust to Lomax from Day was defectively acknowledged, and hence that the recording of the same did not impart constructive notice of the lien thereby created. No defect is pointed out or specified, however, either in the pleadings or argument. No copy of the instrument is attached. The allegation is denied by the answer, and it is very manifest that the alleged defect is not relied upon, but that the plaintiff's case stands, and is claimed to stand, upon other and different grounds. It may be added that any claim for relief upon this ground was probably abandoned in view of the curative statute of 1858 (art. 5, ch. 95, § 2249, Rev.), which went into effect after the date of the trust deed and before the making of plaintiff's mortgage. However this may be, the point is not pressed, nor does there seem to be any foundation for it.

There is no suggestion that the sale by the trustee was not regular, nor otherwise than in strict accordance with

1. DEED OF TRUST: sale. the terms of the power contained in the deed. The petition only alleges, on this subject, that

the "sale was made without the intervention of judicial proceedings or order, and without petitioner or any other creditor being made a party thereto." If plaintiff is concluded by such a sale, in view of all he alleges against it, then it seems to us he has no right to redeem, and that, as against defendants, his case is at an end. And upon this subject there is no room for controversy. The right of Day to redeem, continued until the sale by the trustee, but not afterwards. And a valid sale under this prior deed, cut off plaintiff's right as a subsequent mortgagee. In the absence of a statute giving the right to redeem after sale, or some extrinsic equity, this is the well established rule, to which, as far as we know, there are no exceptions. *Cook et al.* v. *Dillon et al.*, 9 Iowa, 407; *Doolittle* v. *Lewis*, 7 Johns. Ch., 45; *Demorest* v. *Wynkoop*, 3 Id., 129; *Chase* v. *Parker*, 14 Iowa, 207; *Turner* v. *Johnson*, 10 Ohio, 204; *Brisbane* v. *Stoughton*, 17 Id., 482; *Bank* v. *Guttschlick*, 14 Pet., 19. The case of *Newman* v. *Samuels*, 17 Iowa, 528, contains nothing in conflict with the foregoing views.

In this State there is no statute giving the right, and it only remains to inquire whether there are any extrinsic equities which entitle plaintiff to interfere with defendant's title. As we have already seen, there is no suggestion of fraud, of irregularity in the sale, or any other matter in connection with said proceedings, tending to invalidate defendant's title, or to create an equity in favor of plaintiff. Notice, as provided by the deed, was notice to plaintiff as a subsequent mortgagee, and he was bound thereby. He took his mortgage with knowledge of this contract, with knowledge that the trust deed could be thus foreclosed, and was bound to take notice of the sale made in accordance therewith. Being thus affected, has he any equity based upon the federal legislation or the principles of international law, which will avail him against defendants? It seems to us most clearly not.

It will be remembered that the sale was made by the trustee in November, 1859, before the commencement of the rebellion. At this time, then, there is no question but that the Grinnans could take a good title. They were then indisputably citizens, owing and giving allegiance to the government. By their answer they deny that they have done anything to forfeit their right to this property to the government, even under the provisions of the sixth subdivision of section 5, of chapter 95 of the acts of Congress. (Laws 1862, p. 314.) But assuming, that by some rule of the international law, property thus situated might be confiscated by the government, and that by the same rule the sale to Cowse would be void, not admitting, however, by any means, that such rules are applicable to those residing in the disloyal States during the struggle now so happily terminated, we do not see how plaintiff can claim the benefit thereof. As to him, this property was lost before the commencement of the struggle. He asks to redeem. To redeem from what? and for what reason or upon what grounds? From a valid sale, made at a time when there was no impediment resulting from the act of congress or otherwise, and to persons competent to take and hold the same. Suppose the government might declare the property confiscated either in the hands of Cowse or his grantors, what right has plaintiff to claim the same right, under the pretext of redemption? If the government does not act — if the President does not cause the seizure, the title remains in the purchasers or their grantee, under the trust deed. It thus remains precisely as though it had been obtained years before the rebellion, directly by patent from the government, and plaintiff might as well seek to interfere with some other property, belonging to some other person domiciled in the rebellious states, as with this. True, he had a mortgage on this, but he suffered it to be sold by a

valid proceeding under an incumbrance paramount to his. To allow him to have the benefit of a sort of *qui tam* confiscatory proceeding to redeem instead of paying anything, and in the face of and against a valid sale, would certainly be unprecedented. In view of the nature of plaintiff's petition, the *status* of the purchasers under the trustee sale for loyalty or disloyalty, their residence within the so called confederate lines can make no difference. If he has no right to relief, it is immaterial that defendant's property might be liable to some other proceeding. And it is equally immaterial whether Cowse, or any other person, has since purchased the property. For though such sale under the act of congress should be ever so invalid, plaintiff is in no position to question the same; and this objection meeting us upon the threshold of the case, we need not go beyond it. Thus concluding, it of course follows that the demurrer to the answer was properly overruled; that there was no necessity for the appointment of a receiver, and that he should have been discharged. The former order is affirmed, and the latter reversed, at plaintiff's costs.

LOWE, J. — Being interested, took no part in the consideration of this case.