McNamara v. Estes.

## McNamara v. Estes *et al.*

1. Corporation municipal: KEOKUK CITY: TAX DEED. A tax deed, signed by the city collector in his official name, which after reciting the power under which it was executed, proceeded: "Now know ye, that I, C. C. S , collector of the city of Keokuk, by virtue of the authority in me vested, etc , do, by these presents, *in the name of the city of Keokuk*, sell and convey," etc., sufficiently complies with the ordinance of that city, which provides that tax deeds shall "run in the name of the city, and be signed and acknowledged by the city collector in his official name."

2. —— MACADAMIZATION OF STREETS. The macadamization of city streets includes their "trimming" and "guttering;" and a city charter, which gave to the council power to levy and collect a special tax on lots, for the purpose of "macadamizing" the streets running in front thereof, was held, in connection with other provisions of the charter, to authorize a tax for "trimming and guttering" such streets.

3. —— CONSTRUCTION OF POWER. While the danger of giving elasticity to words conferring upon a municipal corporation power to levy special taxes, is admitted, they must nevertheless receive such a reasonable construction as will truly reflect the legislative mind.

4. —— BURDEN OF PROOF. Where the city tax deed is, by the charter and ordinance, made presumptive evidence of the regularity of all prior proceedings, it is incumbent upon the party attacking such deed, to plead and prove defects and irregularities claimed to have existed in such proceedings.

5. Practice: ERROR WITHOUT PREJUDICE. It is not good ground for the reversal of a judgment that the court struck the answer of defendant from file, even though such action was erroneous, if the court afterward permitted the defendant the opportunity to prove the allegations of such answer, and the evidence failed to sustain the same.

6. Tax sale: INCONCLUSIVENESS OF DEED. The recitals of a city tax deed, of the fact of a sale, are not conclusive thereof.

*Appeal from Lee District Court.*

SATURDAY, JUNE 8.

MUNICIPAL CORPORATIONS: POWER TO MAKE ASSESSMENTS, ETC.—This cause involves questions concerning the validity of certain macadamizing assessments, levied by the city of Keokuk upon the lots of the appellants, Estes and Hulburt, and concerning the regularity and correctness of certain proceedings and rulings of the District Court prior to and on the trial. The material allegations of the petition are in substance these, viz. :

That in 1858, the city of Keokuk assessed and levied a certain special tax on certain lots, for the purpose of paying and discharging the expense of macadamizing, trimming, curbing and guttering a certain street on which appellants' lots severally abut.

That this special tax or assessment remaining unpaid, the city collector on the 21st day of December, 1858, offered the lots in question at public sale, and the whole thereof were sold to the plaintiff as the highest bidder.

That lot 1, block 125, was purchased by plaintiff at said sale for $336.76 ; and lot 12, block 63, for $351.50. That said lots not being redeemed, the city collector made to plaintiff a deed therefor.

The petition, which was filed in 1864, then alleges that said sums, with interest, still remain unpaid, and prays for a decree against said lots and against the defendants, establishing plaintiff's lien on the lots for the said sums, with

twenty-five per cent interest from date of sale, foreclosing the said lien and quieting plaintiff's title and extinguishing all of defendant's interest in and to the lots.

The defendants demurred and also answered. These answers alleged various grounds of defense. They deny the authority of the city to levy the special tax; allege that the collector, instead of offering the lots to the person who would pay the taxes due for the smallest portion taken from the left hand side, as required by ordinance, offered the lots to any person who would pay the said taxes for the smallest quantity of said lot, and sold the whole thereof. It is also set up as a ground of defense that the deed to the plaintiff does not run in the name of the city of Keokuk as required by law.

It is also set up as a defense that such a tax is taking private property for public use without compensation and without due process of law. It is also specially denied that the city had authority to levy a special tax on the lots to pay for trimming, curbing and guttering; it is also denied that the city did levy any tax as required and authorized by law; or that it made any legal levy. It is also alleged that the collector failed to indorse on the tax warrant, the time that he received the same, and failed to make return as required by law, etc.

An amended answer denied all the material allegations of the petition. The plaintiff filed a motion to strike from the files all pleadings of defendants, including answers and demurrers, for the reason that the defendants have not tendered or paid the amount required by law in such cases to be paid or tendered before being entitled to defend, nor have they made the showing required by law.

The motion was sustained, and defendants excepted.

Defendants then filed an amended answer which set forth that, on the 28th day of October, 1858, the city

council of Keokuk passed and adopted the following, viz. : " The engineer reported the assessments for trimming, curbing and guttering and macadamizing on Fifth street, from Blondeau to Morgan street, whereupon the following resolution was passed : *Resolved*, that a special tax, as indicated below, be assessed and levied upon the lots hereinafter described, it being the special tax due for trimming, curbing, guttering and macadamizing as reported by the city engineer in his report, October 26, 1858 :

For Fifth street, from Blondeau to Morgan—Lot 12, block 63, $318.14; and other lots    *    *    *    ; lot 1, block 125, $332.34    *    *    *    ; and other lots, stating also the amount opposite each lot.

The answer then alleges that it was under this vote and resolution, and no other, that the proceedings were had out of which the plaintiff's cause of action accrued; that unless this was a legal levy, there was none. And the defendants aver that said resolution did not constitute a lawful levy, because it did not exclusively relate to that part of Fifth street lying in front of said lots ; that the city council had no authority to levy a special tax on said lots for " trimming, curbing and guttering." And defendants ask to be allowed to prove the aforesaid facts.

The bill of exceptions shows that upon this answer being filed, the defendants demanded a trial, to give them the opportunity to show that no legal levy had been made, and to prove the facts stated in the amended answer to be true.

The court, on motion of the plaintiff, struck the amended answer from the files, because the amount of the tax had not been paid or tendered by defendants to plaintiff; but " at the same time the court offered to hear the evidence on the part of the defendant tending to show that there had been no levy, but declined to hear

evidence offered by defendants to prove that said levy was irregular and defective."

The above ruling was on the 14th day of September. At the same term, on the 19th day of the same month, another bill of exceptions shows that the cause " came on for hearing before the court on the answer and application of defendants, on their denial that there had been a tax levied on the lots in controversy, as set forth in the amended answer filed September 14, 1866."

The court ruled that the burden of proof to show that there had been no levy was upon the defendants, unless they should make certain other showings, in order to entitle them to defend. To this ruling defendants excepted.

Defendants then introduced as evidence the resolution of the city council of October 28, 1858, above copied, and proved that this was the only levy of special taxes upon the lots in question. Defendants also introduced as evidence ordinances Nos. 41 and 146. Also the report of the city engineer, as follows : " Assessment for trimming, curbing, guttering and macadamizing against the following described lots, as per estimate of Farael & McNamara, dated October 21, 1858 :

" For Eighth street, between Main and Blondeau :

| | | | | |
|---|---|---|---|---|
| Lot | 1, | block | 125,..................... | $332 34 |
| do | 12, | do | 225,..................... | 330 60 |
| do | 6, | do | 106,..................... | 332 32 |
| do | 7, | do | 106,..................... | 330 60 |
| | | | | $1,325 86 |

"·For Ninth street, between Main and Blondeau :

| | | | | |
|---|---|---|---|---|
| Lot | 1, | Fayette square,................... | | $318 50 |
| do | 12, | do | do .................. | 316 85 |
| do | 4, | block 125,...................... | | 116 34 |

McNamara v. Estes.

| | | | | |
|---|---|---|---|---|
| Lot | 5, | block | 125,...................... | $104 79 |
| do | 6, | do | 125,...................... | 104 79 |
| do | 7, | do | 125,...................... | 104 79 |
| do | 8, | do | 125,...................... | 104 79 |
| do | 9, | do | 125,...................... | 114 69 |
| | | | | $1,285 54 |

" For Fifth street, between Blondeau and Concert :

| | | | | |
|---|---|---|---|---|
| Lot | 1, | block | 63,...................... | $318 $14\frac{1}{2}$ |
| do | 12, | do | 63,...................... | 346 $94\frac{1}{2}$ |
| do | 6, | do | 38,...................... | 310 $00\frac{1}{2}$ |
| do | 7, | do | 38,...................... | 346 $94\frac{1}{2}$ |
| | | | | $1,322 04 |

" For Fifth street, between Concert and High :

| | | | | |
|---|---|---|---|---|
| Lot | 1, | block | 62,...................... | $375 $37\frac{1}{2}$ |
| do | 12, | do | 62,...................... | 375 $37\frac{1}{2}$ |
| do | 6, | do | 39,...................... | 375 $37\frac{1}{4}$ |
| do | 7, | do | 39,...................... | 375 $37\frac{1}{2}$ |
| | | | | $1,501 $49\frac{3}{4}$ |

" For Fifth street, between High and Morgan :

| | | | | |
|---|---|---|---|---|
| Lot | 1, | block | 61,...................... | $331 06. |
| do | 12, | do | 61,...................... | 347 01 |
| do | 6, | do | 40,...................... | 331 06 |
| do | 7, | do | 40,...................... | 346 47 |
| | | | | $1,355 60 |

(Signed.)                         " GUY WELLS,
                                      *City Engineer.*"

Defendants then proved their ownership of the lots in controversy.

McNamara v. Estes.

Defendants then offered to prove "that no. sale was made of said lot, as stated in the collector's deed, attached to the petition; but this evidence was objected to by the plaintiff's attorney, and the objection sustained by the court, to which the defendants excepted. Defendants then offered to produce evidence to prove that no warrant book had been signed by the mayor to authorize the collection of the taxes for which it is alleged in the petition the lots have been sold; but the court refused to hear such evidence, and the defendants excepted.

This was the defendants' evidence.

Plaintiff introduced the collector's deed. And the court thereupon decided that the showing made by the defendants did not entitle them to defend, and ordered a decree for the plaintiff as prayed, *i. e.* barring and foreclosing defendants' title, and quieting and confirming the title of the plaintiff to the lots.

Defendants Estes and Hulburt prosecute an appeal from this decree. There were other defendants who have not appealed.

*D. F. Miller* for the appellants.

*Robt. H. Gillmore* and *Rankin & McCrary* for the appellees.

DILLON, J.—I. The appellants claim that the collector's deed, filed as an exhibit to appellee's petition, is invalid, because it was not executed in the name of the "city of Keokuk." The deed, after full and formal recitals of the power under which it is made, the assessment of the special tax, notice of sale, the sale, etc., proceeds:

1. CORPORA-
TION MUNICI-
PAL: Keokuk
city: tax
deed.

"Now know ye that I, C. C. Stevens, collector of the city of Keokuk, by virtue of the authority vested in me

and the sum of, etc., * * do, by these presents, *in the name of the city of Keokuk*, sell and convey, etc.   In testimony whereof, I have hereunto set my *name*, officially, this 22d day of December, 1858.

(Signed.)    " C. C. STEVENS,
*Collector of the city of Keokuk.*"

The charter of the city (act December 13, 1848, § 30) simply provides " that the collector of said city shall make, execute and deliver a deed, etc.

Another section of the organic law of the city (§ 8, act of January 22, 1853) gives the city power to " enforce and collect, as may be provided by ordinances of the city council, assessments of taxes."

An ordinance of the city, in force when the deed in question was made, provided that " deeds should run in the name of, the city of Keokuk, and be signed and acknowledged by the city collector, in his official name."

The charter does not require the deed to run in the name of the city.   It is silent on this point, except to say that " the collector shall make the deed."

If it be granted that it was competent to provide by ordinance that the deed should run in the name of the city, and that a failure in this respect would invalidate the deed, still we are of opinion that the deed in question complied with the requirements of the ordinance.   It was " signed by the city collector in his official name," and it professes to run in " the name of the city of Keokuk."

To hold the present deed invalid because of the objection above stated, would be to exercise a nicety of refinement in which courts have too much indulged, but which ought to have ended with the days of subtle and hair-splitting schoolmen.

II. It is next urged, that the deed is invalid, because the charter of the city gave it no power to levy a special

2. —— macad-amization of streets. tax and sell property for taxes due for "trimming, curbing, and guttering." The same question is made in other portions of the record.

This presents a question of construction not a little difficult.

It is settled law that the power of a municipal corporation to levy and collect taxes, particularly special assessments, must be plainly given. And the words claimed to confer the power are to be taken strictly, rather than flexibly. The power — a high one — must be clear, plain, and undoubted. It may also be added that it cannot be extended by a latitudinary construction. *Ham* v. *Miller*, June Term, 1866; *Thompson* v. *Schemerhorn*, 2 Selden, 92; *Clark, Dodge & Co.* v. *Davenport*, 14 Iowa, 494; 9 Barb., 152; *Lake* v. *Williamsburg*, 4 Denio, 520; *Sharp* v. *Spier*, 4 Hill (N. Y.), 76; *Howell* v. *Buffalo*, 15 N. Y., 512; *Manice* v. *The Mayor*, etc., 8 Id., 120; *Kyle* v. *Malin*, 8 Md., 34, 37; *Clark* v. *Des Moines*, 19 Iowa, 198; *Meech* v. *Buffalo*, 29 N. Y., 198; *Scoville* v. *Cleavland*, 1 Ohio, 126, 133; 10 Id., 159. Conceding these to be well settled rules, we inquire what power, as respects the question before us, does its constituent or organic act confer upon the city of Keokuk. Section four, of act of 1853, gives "the city council power to levy and collect a special tax on lots, or the owners, for the purpose of curbing, paving, or grading the sidewalks in front of their respective lots." This refers alone to *sidewalks* as distinguished from streets, and gives the power to levy a special tax (1) to grade, (2) to pave and (3) to curb. Curbing, by this section, is treated as a portion of, at all events in connection with, sidewalks.

The next section (5) gives the council "power to levy and collect a special tax on the lot or lots of the owner or owners thereof, on any street or any part thereof within said city, according to their respective fronts, for the

purpose of paving, planking, or macadamizing the streets in front of their respective lots."

This refers to streets, and the power to grade or graduate the same is omitted or not expressly given, as in the preceding section in reference to sidewalks. But the power to macadamize and to levy a special tax to pay for it, is expressly conferred.

Now appellants say : " We admit the right of the city to levy a special tax under the (5th) section to macadamize, but we deny its right, thereunder, to levy such a tax for " trimming, curbing and guttering;" the plaintiff's deed is for such a tax, consequently it, and the proceedings upon which it is founded, are illegal. And the controverted point is just this : Does the power to macadamize include the power to trim and gutter, or to trim, gutter and curb ?

Plaintiff affirms and appellants deny.

No evidence *aliunde* was given as to the meaning of those words.

As the power to levy a special tax for curbing is expressly given by section four, above quoted, we need not consider whether macadamizing would otherwise be taken to include curbing.

But does it, as used in the charter, include "trimming and guttering ? "

The power to levy a special tax to grade is given in the previous section as to sidewalks, and omitted, perhaps by design, as to streets. Now, "trimming" we shall take to be the rounding off of an already graduated street, so as to prepare it for the reception of the macadam material. This being so, it is fairly embraced in the grant of power to macadamize. Such would be the understanding of civil engineers and persons generally, and such, therefore, the law should be held to be. And we reach a similar conclusion with respect to " guttering."

McNamara v. Estes.

Macadamized roads, that they may shed water readily and thereby prevent the road-bed from sinking in the mud or being thrown up by frost, are generally constructed with a raised center, sloping to each side. It is necessary to the construction of a good road of this character, that the surface water which it sheds should have an easy and appropriate place in which to flow away. This is the purpose of the gutter constructed on the side of the road, and such a gutter is really part of the road. Not only does the gutter provide for the discharge of the water, but it supports the macadam material proper and prevents it from spreading. In cities, the outer side of the gutter is generally supported by the curb.

Now, taking sections four and five together, we are of opinion that they justified the levy of the special tax in reference to guttering.

That such a tax is authorized with reference " to curbing " is plain (see § 4) ; that it is authorized as to the body of the street is also plain and undisputed. Why should we hold that the legislature did not intend to confer the power to levy the tax on the or owner to pay for a gutter as well as a sidewalk, curbing and macadamizing?

Perceiving and fully admitting the danger of giving elasticity to words conferring upon municipal corporations such high and great power as the power to levy a special tax and sell for default of payment, we must, nevertheless, give them a reasonable construction, one which truly reflects the legislative mind.

*3. —— construction of power.*

III. It is next claimed by appellants, that the collector's deed and the assessment and levy are invalid, because the power given by section five, of the act of January 22, 1853, was not pursued. This section will be found quoted above. Appellants' point of objection is this : The levy, if allowable at all, should have

*4. —— burden of proof.*

been for macadamizing on the street in front of said lots; instead of this, it was made for macadamizing streets in the city, without reference to said lots, hence the levy is void.

Now, the plain purpose of section five, above referred to, is to compel owners of lots abutting streets, to pay the costs of making improvements of the designated character. These must be made in front of the lot to be charged; and the lot or its owner can only be charged according to his front.

Upon looking into the engineer's report, and the resolution of October 28, 1858 (*see statement*), we have been unable to discover in these or in any portion of the record, anything to show, either that the improvements charged for were not made in front of appellants' respective lots, or that the appellants were assessed more than their proportionate share of the cost thereof.

The collector's deed, both by charter and ordinance, is made presumptive evidence of the regularity of all prior proceedings. If the improvements were not made in front of appellants' lots, or if they were disproportionately assessed, appellants ought to have pleaded and shown these facts.

The answers stricken from the files presented no such defense. By reference to the statement, it will be seen that each lot is separately assessed, and the amount due from each separately stated in the engineer's report.

IV. We come now to consider the ruling of the District

5. PRACTICE: error without prejudice.

Court in striking from the files certain pleadings of appellants, and its decision holding that the objections to the levy were not well taken.

The plaintiff, treating the act of March 22, 1858 (Rev., p. 194, § 1144), as applicable to his deeds, and that it was incumbent on him to foreclose as provided by the Code of 1851, filed his petition for that purpose. See *Sweet* v.

*Billings,* 14 Iowa, 384; *Street* v. *Hughes,* 20 Id., 131; also particularly § 4, ordinance No. 146, copied in record, as to rights and remedies of holders of tax deeds.

In relation to defending such actions, it is provided by the Code of 1851 as follows : " But the owner shall not be entitled to defend unless he has paid or tendered the amount above directed, or shows that no tax was levied on the land, or that he has paid the taxes." Code 1851, § 506.    The charter of the city (§ 14, act January 22, 1853) also provides that " all deeds made to purchasers of lots sold for taxes or assessments, shall be conclusive evidence in all controversies in relation to the right of the purchaser to hold or recover the premises, except it be shown that no tax or assessment was levied on the lot or lots, or that the same was paid before the sale, or that the lot or lots were redeemed before the execution of the deed ordered."

Now, the appellants did not plead or claim that they had ever paid the assessment or redeemed the property from the sale.    But they did plead that no tax or assessment was levied.

The court, it is true, struck their answer from the files. If the action of the court were admitted to be erroneous, it was cured by the subsequent action of the court, allowing appellants the opportunity to prove that no levy or assessment was ever made.

On the trial of this issue, it turned out that, in point of fact, the special tax in question was levied; and that, in point of law, as we have before shown, the objections urged against it were not well founded.

V. But there is one error in the ruling of the District Court, for which its decree must be reversed, and the cause remanded for a new trial.

6. TAX SALE: inconclusiveness of deeds.

" The defendants," acccording to the bill of exceptions "then offered to produce evidence tending to prove that

*no sale* was made of said lots, as is affirmed in the collector's deed," which evidence the court refused to receive, and the defendants excepted.

We are clearly of opinion that the recitals in the tax deed, of the fact of sale, are not conclusive. The owner may show against such recitals that, in truth, no sale was made. This, as we understand, the appellants offered to do in the present case.

If the appellants could establish that no sale was made, they would likewise establish that the plaintiff had paid nothing, hence no tender or offer to pay the amount named in the tax deed could be required as a condition of making the defense. As we read the bill of exceptions, the offer was to prove " no sale," and not alleged irregularities in the sale.

For this reason the decree of the District Court against the appellants is reversed, and the cause remanded for further proceedings. If the appellants fail to establish that there was no sale, and shall not show any other defenses except those ruled against them in the foregoing opinion, the plaintiff will be entitled to a decree similar to the one before rendered by the court, unless appellants shall, prior to the entering of any such decree, tender or pay the amount for which the property sold, and interest.

Reversed.