MUMFORD SMITH and others *v.* ST. LOUIS MUTUAL LIFE INSURANCE COMPANY and others.

April Term, 1878.

PAVEMENT — LIABILITY OF PROPERTY-OWNER UNDER A TOWN ORDINANCE. — Under an act of the Legislature which gives a municipal corporation a lien on lots for the construction of a sidewalk or pavement, and an ordinance of the corporation making it the duty of the owners of the lots to construct "a good and substantial sidewalk or foot-pavement," and, in case of failure, making it the duty of a city officer to construct such sidewalk, the corporation is entitled to a lien for the cost of a sidewalk and curbing, but not for the cost of an embankment or fill to bring the grade of the sidewalk to the established grade of the street, nor for the cost of lowering a fence and repairing a porch on the lot.

*McAlister*, for the city.
*Smith*, for the property-holders.

THE CHANCELLOR: — By the act of 1875, 59, 22, certain municipal corporations, including the city of Nashville, were given power, by ordinance, " to regulate and construct sidewalks and foot-pavements," and, if the owner of any lot failed to comply with the provisions of such ordinances within the times thereby prescribed, to " contract for the construction of such sidewalk or pavement, and pay for the same ; " and for the amount so paid a lien was declared upon the lot, which might be enforced by attachment in law or equity. In the case of *Mayor and City Council of Nashville* v. *Berry* I held this provision of the act to be constitutional, and the ordinances passed in pursuance thereof valid and binding, and enforced the lien. The decree in that case has recently been affirmed by the Supreme Court.

2 Tenn. Leg. Rep. 26. The city corporation has, in like manner, caused sidewalks to be constructed in front of a lot held by a receiver of the court in this case, and, having paid the cost, is seeking to enforce the statutory lien. By agreement of the parties, the extent of the lien and the liability of the lot has been submitted to me for adjudication. The demand of the city for the cost of the sidewalk and curbing is admitted, amounting to $189.24. The city claims, in addition, the sum of $182 for an embankment or fill made in order to bring the grade of the sidewalk to the established grade of the street, and $100 for lowering the fence and repairing the porch on the lot, upon the idea that the work was necessary, and beneficial to the owner of the lot.

The act of the Legislature gives the lien for the amount paid "for the construction of such sidewalk or pavement." The municipal ordinance, passed on August 13, 1875, to carry into effect this act, makes it the duty of the owners of lots to cause to be constructed "a good and substantial sidewalk or foot-pavement," and, in case of his failure, directs the city officer or committee intrusted therewith "to construct or cause to be constructed" such sidewalk. The ordinance proceeds to make specific provision for the width of pavements in different parts of the city, the character and description of curbing and pavement, plans and specifications, and the letting-out of the work. By section 11, the city engineer is required to measure the work and return estimates in detail, "showing the entire cost of the improvement in front of each lot," specifying the name of the owner. This section adds: "When said account is allowed by the City Council, the recorder shall charge the cost of the pavements and curbings so ascertained to the owners of the lots, respectively, abutting thereon, and shall send copies of said accounts to the city attorney, whose duty it shall be to proceed forthwith to the enforcement of the lien declared by act of the General Assembly in favor of the city."

It will be seen, then, that the act of the General Assembly gives authority to construct foot-pavements and charge the cost of the construction to the lot-owner, and that the ordinance, in strict accordance therewith, limits the charge on the owner to the " cost of the pavement and curbing." The settled rule is, that the power of a municipal corporation to levy and collect special assessments must be strictly construed. Nothing that is not plainly given can be demanded. *Washington* v. *Mayor of Nashville*, 1 Swan, 184 ; *McNamara* v. *Estes*, 22 Iowa, 254, and cases there cited by Dillon, J.  It is obvious, in the case before us, that neither the law nor the ordinance contemplates any charge upon the owner of the lot beyond the cost of the pavement.  And such a restriction is perhaps essential to the constitutionality of the assessment, as it manifestly is to the equality of the burden on the property-owners.  If, in addition to the cost of the pavement, the owner could be charged with the cost of the fill or cut necessary to bring the pavement to the grade of the street, the assessment would be heavier on the owners of lots above or below that grade than on those whose lots were on a level with the grade.  In the present instance, the cost of the grading alone is nearly as great as the entire cost of the pavement and curbing.  If you charge the owner of the lot with this burden, you make him pay one hundred per cent more than any of his neighbors whose lots may be on a level with the grade, which would be clearly unequal and unjust.  The law and the ordinance contemplate no such inequality and injustice, but limit the charge to the pavement proper.

The charter of the city of Nashville, act of 1848, by sec. 6, subsec. 9, confers upon the corporation power to " establish, grade, and pave " the streets ; and the municipal authorities, by various ordinances, have assumed and exercised complete control over the streets, including the foot-pavements.  Our courts have held that a municipal corporation is the proprietor of the public streets, which are held in trust for the convenience of the citizens, and, as

such proprietor, may grade and otherwise improve them; and if, in the exercise of this power, the property of any individual shall be rendered less valuable, as by being elevated or depressed below the graded level, it is *damnum absque injuria*. *Humes* v. *Mayor of Knoxville*, 1 Humph. 403, and cases cited in head-note of new edition. This decision is in accordance with authority. *Goszler* v. *Corporation of Georgetown*, 6 Wheat. 593; *Smith* v. *Corporation of Washington*, 20 How. 148. Without some positive provision of law to the contrary, it is the duty of the corporation, as the proprietor of the streets, to grade them as the public convenience may require, at the common expense of the municipality. It has no more power to assess the owner of a lot for such grading immediately at the lot than in the centre of the streets, unless authorized so to do by statute, and any such statute would, under our decisions, be liable to grave doubts as to its constitutionality. *McBean* v. *Chandler*, 9 Heisk. 349. At present, there is no such statute, and the charge in the case before us is limited, both by the law and the ordinance, to the cost of the pavement. To that extent its validity is settled, and any charge beyond that has nothing to rest on.

The city attorney has called my attention to two or three cases, cited in Judge Dillon's masterly work on Municipal Corporations, which seem to hold that grading is included in the general term of "paving." But, upon examination, these cases will be found to have no bearing on the question before us. In *Schenley* v. *The Commonwealth*, 36 Pa. St. 29, the statute under consideration provided that the costs and expenses of "grading and paving" any of the streets should be a lien on the property fronting thereon, and it was held that the cost of sidewalks and curbing fell within the words. In *McNamara* v. *Estes*, 22 Iowa, 246, the only question was whether "trimming and guttering" were included in a statutory provision for the levy and collection of a special tax for "macadamizing" a street, the statute containing separate provisions as to "grading and paving." In

*City of Norwich* v. *Hubbard*, 22 Conn. 587, the proceeding was to enforce a lien for paving, under a statute which authorized the city " to level, raise, or form sidewalks " at the expense of the lot-owners, but the only question was whether the mortgagee of the lot was bound by notice to the mortgageor. In *The State* v. *Council of Elizabeth*, 1 Vroom, 365, the property-owners had asked that the street might be paved, and the decision was that the grading was necessarily embraced in the paving, the application relating to the whole street, and not the sidewalk alone.

I am of opinion, therefore, that the corporation of Nashville is not entitled to charge the owners of the lot in controversy with the cost of the embankment or fill as rendered in the account. And there is, of course, no legal ground whatever upon which the charge for lowering the fence and repairing the porch can be sustained.