Chicago, Milwaukee & St. Paul R'y Co., v. V. C. Hemenway *et al.*, Appellants.

Taxation: RAILROAD GRANT LANDS: *Unpatented.* Act Congress, May 12th, 1864, granted lands to Iowa to aid in construction of a railroad. Acts 20th General Assembly, chapter 28, provides that lands granted by the general government to any railroad, or to the state, and by it granted to any railroad, shall be subject to taxation after the year when earned. *Held,* that lands within the indemnity limits of the grant, on selection and confirmation by the secretary of the interior, were subject to tax, though not patented.

*Same.* The lands were taxable under Acts 20th General Assembly, chapter 28, notwithstanding there had been no patent, and the equitable title was in the railroad and the legal in the government.

TAX DEED: *As evidence.* Code, section 1444, provides that a tax deed shall be evidence that the property was subject to the tax. *Held,* that a tax deed within a grant to a railroad was evidence of an earning of the lands.

ACT OF CONGRESS CONSTRUED. Act Congress May 12, 1864, granted land to the state of Iowa to aid in construction of a railroad. Section 4 provided that, whenever the governor certified the completion of 10 miles of road, patents should be issued, and provided that the lands should not be disposed of nor incumbered save as the same were patented. Acts 20th General Assembly, chapter 28, provided that lands granted by the general government to a railroad, or to the state for a railroad, should be subject to taxation when earned. *Held,* that the act of

congress did not mean that the lands could not be patented, but merely prohibited any disposition inconsistent with the grant.

*Not contrary to act admitting Iowa.*    The taxation was not contrary to the ordinance admitting Iowa to the Union.

*Appeal from Dickinson District Court.*—Hon. W. B. Quarton, Judge.

Friday, October 17, 1902.

Decree quieting title as prayed.    Defendants appeal.
—*Reversed.*

*L. E. Francis* for appellant.

*Geo. E. Clark* for appellee.

Ladd, C. J.—The legal title to the 40 acres of land in controversy remained in the United States until the patent was issued to the state of Iowa, September 21, 1893, and in the state until conveyed to the plaintiff, November 15, 1895, under the provisions of chapter 21 of the Acts of the 17th General Assembly.    The right to it was acquired under the act of congress entitled "An act for a grant of lands to the state of Iowa, in alternate sections, to aid in the construction of a railroad in said state," approved May 12, 1864.    See copy in *Bowne v. Bilsland,* 83 Iowa, 162.    The plaintiff so far completed its line of road as to earn the land under the grant of congress and the various acts of the state legislature in 1878.    The record does not show the cause of the delay in issuing the patent.    In 1884 the general assembly enacted that:  "All lands lying within the state of Iowa, which have been heretofore granted or may be hereafter granted to any railroad company or corporation by the general government or by the general government to the state of

Iowa, and by the state granted to any such railroad com-
pany or corporation, shall be subject to assessment and
taxation within the counties wherein situated from and
after the year the same may be earned, to the same extent
as though patents had been issued to, and the title of
record was in such railroad companies or corporations."
Chapter 28, Acts 20th General Assembly. By virtue of
this act the 40 was assessed each year from 1889 to 1895,
inclusive, and the ordinary taxes levied thereon. A tax
deed for two acres was executed January 10, 1895, to the
Farmers' Loan & Trust Company, on a sale for the taxes
of 1890, and February 8, 1896, a tax deed was issued to
V. C. Hemenway for the remaining 38 acres on sale for
taxes of 1890 and the following year. The county also
claims the right to collect the taxes of other years men-
tioned. Prior to the enactment of the statute quoted, the
land was not taxable. *McGregor & M. Railroad Co. v.
Brown*, 39 Iowa, 655. But it obviates the holding in the
cited case, and also *Iowa Falls & S. C. R. Co. v. Wood-
bury Co.*, 38 Iowa, 498, that extrinsic proof may not be re-
ceived, in the absence of a charge of fraud, to show that
the lands were earned at an earlier date than the gover-
nor's patent, by providing that "parol evidence shall be
admissible to prove when said lands were earned." Sec-
tion 2, c. 28, Acts 20th General Assembly. In *Sioux City
& St. P. R. Co. v. Osceola County*, 43 Iowa, 318, the court
held that, as the transfer of title depended upon legisla-
tive action under chapter 134 of the Acts of the 11th Gen-
eral Assembly, without which the land did not become the
property of the company, it was not taxable. See, also,
case of same title in 50 Iowa, 177, where the court also
decided that, prior to the execution of a certificate by the
governor under chapter 34 of the Acts of the 15th General
Assembly, the land might not be taxed. The statute quo-
ted meets the objections raised in these cases by providing
that the lands granted shall bear their portion of the tax

burden "from and after the year the same are earned."
While the 40 in controversy is in what is known as the
"indemnity limit" (that is, more than 10 and less than 20
miles from the line of definite location), and could only be
claimed by the company in lieu of lands otherwise disposed
of within the place limit (that is, within 10 miles of such
line), yet upon selection, duly confirmed by the secretary
of interior, the right of the company thereto attached as
definitely as to that within the place limit upon the loca-
tion of the road and filing of proper maps with the secre-
tary.    Upon the completion of the road it was earned
within the meaning of the statute, and the company was
entitled to it under the provisions of the acts of
congress and those of the state legislature.  The rec-
ord does not show when this 40 acres was selected,
but, as the tax deed is presumptive evidence "that the real
property conveyed was subject to taxation for the year or
years stated in the deed," we must assume that it was in
fact selected prior to the assessment and levy of the taxes.
See section 897, Code 1873; section 1444, Code;  *McNam-
ara v. Estes*, 22 Iowa, 256; *Brownell v. Bank*, 63 Iowa,
757; *Hunt v. Gray*, 76 Iowa, 274; *Barrett v. Kev-
ane*, 100 Iowa, 656.    The company then had the
equitable title to the 40 acres when assessed and
taxes levied.    That it was taxable notwithstanding the
naked legal title remained in the general government is
settled by the opinion of the supreme court of the United
States in *Wisconsin Cent. R. Co. v. Price Co.*, 133 U. S.
496 (10 Sup. Ct. Rep. 341, 33 L. Ed. 687), and of this state
in *Stockdale v. Treasurer*, 12 Iowa, 536.    The latter case
also disposes of appellee's contention that the taxation was
contrary to the provisions of the ordinance admitting
Iowa into the Union.    It was not the property of
the United States, but of the railroad company, at
the time.    Unless, then, the state was prohibited by the
act of congress from levying any tax on the land before

being patented, the deeds must be upheld.    Section 4 of
that act prescribes the method of procuring the patent of
the land granted from the government, which was, in sub-
stance, that whenever the governor certified that the com-
pany had constructed 10 miles of road, as required, the
secretary should issue patents for 100 sections of land for
the benefit of the company.    Annexed to this and
some other matters in this clause:  "And, provided
further that said lands shall not in any manner be
disposed of or incumbered, except as the same are patented
under the provisions of this act."    The object of this pro-
viso was to prevent the state from diverting the land
from the purposes of the grant.    The act not only did not
prohibit it from disposing or incumbering in aid of the de-
sign of congress, but in fact contemplated such disposition
before any patent should issue.    The land was to be earned
by the construction of sections of road each of 10 miles in
length, as a condition precedent to the secretary issuing
patents to the state.    It is very evident, then, that "ex-
cept as the same are patented" cannot be construed to
mean "until same are patented."    Nor can this clause be
said to refer to patents by the state, as the manner of
passing title by it is not referred to in the act.    By section
3 the grant is "subject to the disposal of the legislature for
the purpose aforesaid, and no other."    That purpose was
attained by the completion of the improvement contem-
plated,—the construction of a great highway of travel and
commerce across the then unsettled portions of the state.
When this had been accomplished in compliance with the
conditions imposed, the lands granted had been disposed of
precisely as stipulated in the act of congress; that is, in
such manner as to entitle the state to patents for all the
granted land for the benefit of the railroad company.    The
proviso had no operation beyond the disposition by the
state.    It simply exacted that the state could not part with
the land save in the manner and on the conditions essential

to enable it to obtain patents; not that it could not dispose of or incumber until patents had issued. The conclusion follows, then, that this clause furnished no impediment to the taxation of land earned under the grant, and of which the railroad company had been the equitable owner for many years.—REVERSED.