THE BURLINGTON AND MISSOURI RIVER RAILROAD COMPANY v. HAYNE.

1. Railroad: LANDS: TAXATION. Lands included in the grants for the construction of railroads in this State, made by the act of congress of May 15th, 1856, are liable to taxation by the State, *after* the railroad companies to which they were granted become possessed of the unconditional title in fee and *before* they have been alienated by said companies.

*Appeal from Wapello District Court.*

MONDAY, JUNE 26.

ON the 15th of May, 1856, an act of congress was approved, granting to this State, lands in aid of the construction of certain lines of railroad, including that of the plaintiff. By an act of the General Assembly of this State, approved July 14th, 1856, these lands were accepted, and granted at that date to the several railroad companies therein mentioned, coupled with the rights, powers, privileges and conditions that were annexed to the congressional grant. By a supplemental act, passed January, 1857, for the purpose of carrying out the objects of said grant, said companies were authorized to raise money by deed of trust or mortgage, upon all or any part of said lands, applying the money realized therefrom exclusively to the construction and equipment of said road. In October, 1858, that portion of these lands which fell to and was granted to the Burlington & Missouri River Railroad Company were mortgaged by said company for the purpose of raising money to construct their line of road, having been previous to that time selected and identified. A few tracts of these lands are situated in the county of Wapello, which has assessed and levied a tax on the same for county, State and other purposes, for the years 1859, 1860, 1861 and 1862.

It is charged that the defendant intends to enforce a collection of these taxes by a sale of the property, unless restrained by a process of the court, and this suit has been commenced by the plaintiff for that purpose, alleging in the petition, among other things, the above facts, and also that the lands have not yet been sold; that the mortgage aforesaid is still unsatisfied; that the assessment and collection of said taxes would be illegal, and without authority of law; that the power to tax does not arise until after

these lands are sold by the railroad company. The defendant demurred to the petition, and also for the same reason made a motion to dissolve the injunction and dismiss the bill, both of which were sustained, and the plaintiff appeals.

*D. Rorer* for the appellant.

*Hendershott & Burton* for the appellee.

COLE, J. — Upon the argument of this cause, it was suggested that there might be a doubt, upon the averments of the petition, whether the plaintiff had fully performed the conditions annexed to the grant, so as to be entitled to the fee in the lands taxed.

1. RAIL-
ROADS:
lands:
taxation.

The counsel for the plaintiff, therefore, stated that it was the purpose of the pleader to so state, and that the conditions were not only performed by constructing the road through these lands, but the same had been properly certified to the plaintiff, after certificate of completion of the railroad through them, by the governor of Iowa, and duly recognized by the federal government through its proper department.

The counsel for the respective parties, then in open court, agreed that the only question arising upon the petition and the demurrer and motion to dissolve the injunction, as determined by the court below, and the sole question presented for the adjudication of this court, was, whether the lands included in the grant are liable to taxation by the State after the railroad company became possessed of the unconditional title in fee, but before the same are alienated by it?

The counsel for appellant, in his elaborate argument at bar, in support of his position that the lands were not liable to taxation, cited and relied upon *Weston et al.* v. *The City Council of Charleston*, 2 Peters, 449; *Dobbins* v.

*The Commissioners of Erie Co.*, 16 Id., 435; *McCulloch* v. *The State of Maryland*, 4 Wheat., 116; and *Bank of Commerce* v. *New York City*, 2 Black, 620.

After that full and deliberate consideration which the .importance of the question involved justly demands, we are agreed in the opinion that the case at bar is not within the principle upon which the cases cited were based, and that the lands are liable to taxation by the State. That this liability to taxation is as complete after the railroad company has performed the requisite conditions and become possessed of the unconditional legal title, as it will be after such title shall become vested by voluntary alienation or otherwise, in private individuals.

In view of the purpose for which our decision is desired, and the course to be pursued, as announced by counsel in argument in case our opinion was adverse to plaintiff, we do not feel called upon to discuss at length the question made, but simply to announce that the judgment of the District Court is

Affirmed.

LOWE, J. — I readily concur in the conclusion arrived at in the opinion just read, but prefer to state my reasons therefor a little more fully and specifically. It is evident that the right to tax the lands described in the petition, depends upon the question whether the plaintiff has a taxable interest therein not exempt by law.

This involves an inquiry into the nature and extent of the plaintiff's right to and interest in said lands, so far as the same may be ascertained from the facts set out in the bill. This, in the first place, refers to the act of congress, which grants to the State of Iowa, for the purpose of aiding in the construction of a railroad from Burlington, on the Mississippi river, to a point on the Missouri, near the mouth of Platte river, * * * every alternate section of land,

designated by odd numbers, for six sections in width on .each side of said road, &c.

This is not unlike a class of grants made by congress which have often received a judicial construction, and have been held to pass at once the title to and vest the seizin in the party named therein as grantee. *Lessieur* v. *Price*, 12 How. (U. S.), 59; *Strong* v. *Lehmer*, 10 Ohio, 93; *Ward* v. *Bartholomew*, 6 Pick., 409; *Enfield* v. *Day*, 11 N. H., 512; *Hill* v. *Dyer*, 3 Greenl., 341; *Allison* v. *Halfacre*, 11 Iowa, 450.

It follows that the legal title of these lands by said congressional act was vested in this State, but, as the act itself shows, in trust, for the benefit of any railroad companies that might be organized, to construct the line of railways designated therein. The plaintiff in this case, being one of said companies, becomes on that account the beneficiary of so much of said grant or trust lands as fell within the prescribed limits of its line of road. This trust was accompanied with certain conditions and restrictions, among which were the following:

1st. That the lands or the proceeds thereof should be applied exclusively to the construction of said lines of railways and for no other purpose.

2d. That the State, as trustee, should dispose of the lands only in a mode specified in the grant, that is to say, a quantity of land in the first instance, not exceeding one hundred and twenty sections for each of said roads might be sold, and then when the governor of the State shall certify to the secretary of the interior, that twenty continuous miles of any of said roads are completed, another similar quantity of lands might be sold, and so from time to time until said roads are completed, and if any of said roads should not be completed within ten years, no further sales should be made, and the lands unsold should revest in the United States. Regularly, under the conditions of the

grant, the State could only execute the trust, as the constuction of the roads progressed by sections of twenty miles. That is to say, each section successively of twenty miles, when completed, would entitle the several companies to 120 sections of land ; and when the title and possession of the same was conferred upon the companies, in the manner contemplated by the terms of the grant, they would have such an interest or ownership in said lands, as would subject them to taxation if not otherwise exempt, and this for the reason that then they would be free to do as they pleased with said lands, sell, mortgage, use or otherwise dispose of them, exercising all the acts of ownership over them, as fully and to the same extent as any other proprietor might or could do with his own property.

The State, however, for greater convenience, or some other reason not entirely apparent, on the 14th July, 1856 (as properly stated in plaintiff's petition), passed an act accepting the grant, and at the same time, and in the same act, disposed of and granted all of said lands at once to the several railroad companies, subject, however, to the prescribed conditions and restrictions annexed to the original or congressional grant, as well as subject to certain conditions annexed to its own grant.

While, therefore, by said legislative act, the legal title and seizin were technically conferred upon said companies ; yet it was given and received, expressly subject to the conditions and restrictions named in both acts. It follows, that such title is only formal, and does not become effectual, perfect or available to these companies until the conditions of the grant are fulfilled by them, in the manner prescribed. It is plain from the terms of the trust, and the nature and mode of its exactions, that the conditions which will entitle the companies to these lands must and will be performed by stages or given periods, and, hence, a complete title, and livery of seizin, will come to them by stages or given

periods, at which time only, we suppose, will they have a taxable interest in the same. Now, the difficulty with the plaintiff's bill is, that of its suppression of the facts essential to a clear apprehension of the rights of the parties. It does not, on its face, state a case entitling the company to the relief asked. It seeks to enjoin the collection of taxes on certain tracts of lands as having been levied without authority of law, but it fails to state whether the company has or has not built any part of their road; whether the company has or has not performed the conditions of the grant which would entitle it to the particular tracts of land described in the bill; nor whether they have or have not been certified to the company. It is true that the language of the bill, taken as a whole, when coupled with the oral admissions made at bar, will justify the inference that the lands designated therein do belong to and have vested in the company. Then why not taxable? They do not fall within any of the exemptions named in the statute. Taxing them is neither a legal or technical diversion or infringement of the objects of the grant, nor a diminution thereof, in the sense of the law, as contended for in the argument; nor does the possible contingent reversionary interest which the government may have in these lands, operate to bar the State in taxing the same. If the company fails to build the entire line of their road within the time named by the grant, it will only be the uncertified lands still remaining which will revert. There is no suggestion in the bill that the lands therein described will likely revert to the government. The statement in the bill and in the argument that these lands remain yet unsold by the company, and for that reason are not taxable, merits but little consideration. The company is not a public but a private corporation, organized for pecuniary profit, and if the land is theirs to use, to sell, to control and to enjoy, in all the methods

which individuals may use their property, what valid reason can be assigned for exempting the company's lands from the burden of taxation? I can imagine none, and therefore concur in allowing the judgment below, dismissing the bill, to stand.

Affirmed.