The Iowa Falls and Sioux City Railway Co. v. Cherokee County.

of the resale by him, provided such resale was made in good faith before notice of the mistake. But nothing of this kind appears. Surely, the defendant could not resell the land and place it beyond the reach of the plaintiff, and then have the sale set aside, or the payment of the bid not enforced because of the mistake. He must be diligent after the discovery of the mistake, and must also offer to do equity.

Affirmed.

---

The Iowa Falls and Sioux City Ry. Co. v. Cherokee County.

1. **Taxation:** OF RAILROAD LANDS: EFFECT OF PATENTS. The lands granted to the Iowa Falls and Sioux City Railroad Company by the fourth section of the act of the General Assembly, approved April 7, 1868, did not become the property of the company, nor taxable as such, until the construction and completion of its road in accordance with the terms prescribed by said act.

2. —— The patents issued by the governor to said company are conclusive evidence that the lands mentioned therein were then earned, and at least *prima facie* evidence that they were issued *as soon as the lands were earned.* It is accordingly *held,* that the lands were not subject to taxation until the year following the issuing of the patents.

*Appeal from Cherokee District Court.*

Thursday, December 4.

The plaintiff filed a petition in the district court, alleging substantially that it was the owner of a large quantity of lands in Cherokee county; that the treasurer of the county had advertised said lands for sale for taxes levied thereon for 1870 ; that the board of supervisors had levied taxes thereon for 1871, and averring that the said lands belonged to the State of Iowa until the 5th day of July, 1871, when the same became the property of the plaintiff, and that they were not taxable prior to the year 1872. An injunction restraining the sale of the lands for the taxes of those years is prayed.

The petition was presented to the judge of the 8th judicial, Hon. James H. Rothrock, on the 19th day of September, 1871, who made an order thereon, allowing a temporary injunction as prayed in the petition.

The cause was tried by the court in equity, and a decree rendered for the plaintiff, making the injunction perpetual. The defendant appeals.

*H. B. Wilson* and *Eugene Cowles* for the appellant.

*Isaac Cook* and *N. M. Hubbard* for the appellee.

MILLER, J. — The question in this case is whether the plaintiff was the owner of the lands in controversy, so that they were subject to taxation for the years 1870 and 1871. These lands are a portion of those granted by congress to the State of Iowa, by act of May 15, 1856, for the purpose of aiding in the construction of a railroad from the city of Dubuque to a point on the Missouri river, near Sioux City, with a branch from the mouth of the Tete Des Morts. The lands granted by that act to the State for the purpose above mentioned were, by an act of the general assembly of Iowa, passed July 14, 1856, granted to the Dubuque and Pacific Railroad Company, upon the terms mentioned in that act and in the act of congress.

On the 2d of March, 1868, congress passed an act extending the time for the completion of the road from Dubuque to Sioux City, until January 1, 1872. On the 10th day of March, 1868, the general assembly of Iowa passed an act annulling all the right and title of the Dubuque and Pacific (then Dubuque and Sioux City) Railroad Company to the lands transferred by the act of April 14, 1856, and resuming all the right, title and interest in said lands, except one hundred and twenty sections for each twenty miles of road completed and equipped by the railroad company.

In order to dispose of the lands not thus earned by the railroad company, in furtherance of the objects of the grant thereof by congress, the general assembly of Iowa passed an

act, approved April 7, 1868, containing the following provisions:

"SECTION 1. *Be it enacted by the General Assembly of the State of Iowa,* that a contract entered into between the Dubuque and Sioux City Railroad Company of the first part, and the Iowa Falls and Sioux City Railroad Company of the second part, transferring so much of the Dubuque and Sioux City Railroad as remains to be constructed, together with the franchises, right of way, depot grounds and other ap purtenances of said road to be completed, also transferring all right and title of the Dubuque and Sioux City Railroad Company to so much of the lands granted by congress to aid in the construction of said road as shall appertain to, or be legally applicable to the construction of the uncompleted part of the Dubuque and Sioux City Railroad as aforesaid, except as to the lands hereinafter granted to the Dubuque, Bellevue and Sabula Railroad Company, be and is hereby legalized and confirmed.

" SEC. 2. That the *pro rata* of six sections of land per mile, reserved by said contract to the Dubuque and Sioux City Railroad Company, and the *pro rata* of six sections per mile, conveyed by said contract to said Iowa Falls and Sioux City Railroad Company, shall be adjusted between said companies as follows, to wit: the land actually conveyed to third parties shall be set apart to the said Dubuque and Sioux City Company, not exceeding six sections per mile of road now built, and if over that number of acres of land have been conveyed, the excess over that amount shall be taken off of the west end of the last installment of lands so conveyed; and in case less than that amount of lands have been conveyed as aforesaid, then a sufficient amount shall be taken to make up such *pro rata* from that portion of the land-grant next adjoining and immediately west as near as practicable, to the lands last conveyed by said Dubuque and Sioux City Railroad Company."

" SEC. 3. That a *pro rata* of six sections per mile of said land-grant be and the same is hereby granted to and conferred

upon the Dubuque, Bellevue and Sabula Railroad Company, to aid in the construction of the Tete Des Morts branch, required to be built by the act of congress granting said lands to the State of Iowa. *Provided*, that said company shall not incumber or dispose of said lands until the said branch road shall be completed and open for business, and that said branch shall be completed within two years from the first of January next. Said lands shall be of an average quality and value of so much of said lands granted by the United States as now remain undisposed of, and the governor of Iowa shall select, or cause to be selected, the land hereby granted to said Dubuque, Bellevue and Sabula Railroad Company, or cause the same to be reserved from lands outside the six-mile limits of said grant, and upon completion of said branch, as above provided, he shall execute a patent for said lands to said company."

The fourth section is as follows: " That so much of said land-grant as is applicable to the uncompleted portion of the road as aforesaid, west of Iowa Falls, excepting the lands hereby granted to said Dubuque, Bellevue and Sabula Railroad Company, is hereby granted to and conferred upon the said Iowa Falls and Sioux City Railroad Company, subject to the terms and conditions of the act of congress granting the said lands, dated the 15th day of May, A. D. 1856, and the act amendatory thereto, and the act of congress passed the present session ; and also subject to the terms and conditions of this act as herein expressed as follows, to wit : The road shall be completed as a first-class road from Iowa Falls on the route now surveyed, located and partly graded, through Webster City and Fort Dodge, and the depot buildings shall be erected on the grounds heretofore donated by the people of said towns for that purpose, and shall be completed thence to Sioux City, which route shall be at all points within the limits of the said land-grant. The track of said road shall be laid with a good substantial rail weighing not less than 56 pounds per lineal yard. The road shall be completed to Fort Dodge by the 1st day of July, 1869, the time now fixed by act of

congress; one-half the balance within one year from that time, and the remainder before the 1st day of January, A. D. 1872; and said road when any twenty miles shall be completed shall be subject to the lease of the Illinois Central Railroad Company, transferred to the Iowa Falls and Sioux City by the Dubuque and Sioux City Railroad Company, and shall be operated as one continuous and unbroken through line of railroad from Dubuque to Sioux City."

Section five is as follows: "Said lands so granted as aforesaid to the Iowa Falls and Sioux City Railroad Company shall be patented by the governor to said company as the same shall be earned by the building of said road, but no patent shall be issued by him for any portion of said lands until at least 75 miles of road shall be completed, and 'no patent shall be made for any lands more than 40 miles in advance of the point to which said road may be constructed from time to time,' as provided by said act of congress. No patent shall be made for any lands located within 50 miles of Sioux City, until said company shall have its entire road completed to Sioux City, except for such road as said company may cause to be built and operated from Sioux City eastward, and when said company shall have 40 miles of road built and operated from Sioux City eastward, then this restriction shall cease, and such lands may be patented for any road built by said company; and no patent shall include lands situated in more than one county, and said patent shall be by said company recorded in the county where said lands lie, and a certified copy of the record of the same may be used as evidence with the same effect as the original. And in case any of said lands hereby granted are now, and were on the 1st day of January last, occupied by actual settlers, residing thereon and improving the same, upon such settler making proof to the satisfaction of the register of the State land office of such settlement and improvement, he shall be entitled to purchase not exceeding one-quarter section of land of the State at the rate of $2.50 per acre, and when such lands shall have been earned by the extension of said road, upon the payment to the said company of the

said sum, the governor shall execute a patent to such actual settler for said land."

The sixth section reserves to the General Assembly the power to resume the lands granted which have not been earned " on default of the company to build the road to Fort Dodge by the 1st day of July, 1869, or any portion of the road within the time limited by the act, or in case the General Assembly shall be satisfied that said company is not pushing forward the work on said road with reasonable diligence, so as to warrant the belief that the whole line will be completed to Sioux City by the 1st of January, 1872."

The seventh section requires that the " Iowa Falls and Sioux City Railroad Company shall signify their acceptance of the terms and conditions of this act by a written instrument, signed by the president of said company, to be filed with the governor" within thirty days after the passage of the act.

Whatever right or title to the lands in controversy the plaintiff ever acquired, was derived from the State under the provisions of the above act of the legislature which has never received judicial interpretation. When did the plaintiff acquire such a right or ownership in the lands as that they became subject to taxation? Or, in other words, when did the property in these lands pass from the State so as to render them taxable as private property? The plaintiff insists that the lands were the property of the State, and hence not liable to taxation, until they were conveyed to it by the governor's patent on the 5th day of July, 1871. On the other hand it is claimed by defendant that the lands became the property of the plaintiff as soon as it had earned them, even before they were conveyed by the State; and he further claims that it is proved that the lands in Cherokee county were earned by the plaintiff in 1869, and therefore subject to taxation for the following years. This position of appellant is based upon *The Iowa Homestead Company* v. *Webster County*, 21 Iowa, 221, followed in the *Dubuque and Pacific Railroad Company* v. *Webster County*, id. 235, and approved in *The Cedar Rapids and Mo. R. Co.* v. *Woodbury County*, 29 id. 247. It was

held in the first two cases mentioned that under the act of congress of May 15, 1856, granting lands to the State to aid in the construction of certain railroads, and the act of the general assembly of July 14, 1856, the railroad companies named in the last mentioned act became legally and absolutely entitled to one hundred and twenty sections of the land granted from the time of the completion of twenty miles of road in the manner in said acts contemplated, the certificates of the governor of the State and from the land department of the United States government being necessary only as evidence of a title already existing, and that from the completion of such twenty miles the lands to which the company thus became entitled were subject to taxation.

We do not deem it necessary now to vindicate this holding against the attack of the learned counsel for the appellee. The rights of the plaintiff in this case, however, are not to be ascertained by those acts, but by and under the act of the general assembly herein set out, and particularly under the fourth section of that act. With certain exceptions, the lands applicable to the uncompleted portion of the road are there granted to and conferred upon the plaintiff, subject to the terms and conditions of the act of congress granting the lands to the State, and the act amendatory thereto, and the act of congress passed March 2, 1868, and also subject to the terms and conditions named in the fourth section of the act above set out. The road was there required to be completed as a first-class road from Iowa Falls on the route then surveyed, located and partly graded, through Webster City and Fort Dodge. The depot buildings were required to be erected on the grounds theretofore donated by the people of those towns for that purpose. The road was to be completed to Sioux City, and the route should be at all points within the limits of the grant. The track of the road was to be laid with a good substantial rail, weighing not less than fifty-six pounds to the lineal yard; the road completed to Fort Dodge by the 1st day of July, 1869; one-half the balance within one year from that time, and the remainder before the 1st day of January, 1872. The plain-

tiff was to become entitled to the lands upon performance of these terms and conditions and not otherwise.

The next section provides that the lands thus granted to the plaintiff "shall be patented by the governor to said company *as the same shall be earned by the building of said road.*" Here it is clearly expressed that the lands shall become the property of the company as, and only as, they shall be earned by the building of the road, as prescribed in the act; and it as clearly appears that the evidence of such ownership shall be the patent of the governor. The company shall not own the lands except as they earn them, and as they earn them the governor shall issue and deliver his patents for the lands thus earned. The patent is conclusive evidence as against the State that the lands mentioned therein were then earned, and it is at least *prima facie* evidence that the patent was issued *as soon as the land was earned,* for that is what the statute says the governor shall do; and in the absence of evidence *to the* contrary, it must be presumed that the governor performed his duty as required by law, by the issuance of the patent "as the land was earned by the building of the road," in accordance with the directions of the statute. Appellant's counsel insists, however, that this *prima facie* evidence afforded by the patent, of the time when the lands were earned by plaintiff, is rebutted and overcome by other evidence: 1st, the testimony of R. W. Luther, residing in Cherokee county, who testifies that he opened a lumber yard at Old Cherokee in December, 1869; that he received a carload of lumber over plaintiff's road on the 8th day of that month at Leon, now Hazard, in Cherokee county; the lumber was received over the railroad from Sioux City; that the cars ran into Hazard from Sioux City, shipping goods, about the middle of November, 1869, and into Cherokee from Sioux City about the last of February, 1870; he further testifies that the road was completed from Iowa Falls to Cherokee some time in the month of July, 1870. When the witness first got lumber over the road, the trains were hauling material for the construction of the road. The Illinois Central Railroad

DECEMBER TERM, 1873. **491**

The Iowa Falls and Sioux City Railway Co. v. Cherokee County.

Company took possession, says the witness, of the road and run through trains from Dubuque to Sioux city about October 1, 1870.

It is agreed by the parties that the plaintiff executed a warranty deed for a tract of the land on the 31st day of March, 1871. This is all the evidence tending to show that the plaintiff had earned the land, so as to entitle it to patents from the governor therefor, at any time prior to the issuance of the patents; and we are clearly of the opinion that it fails to overcome the evidence of the patents. It fails to show that the plaintiff was entitled to a patent for this land in Cherokee county at an earlier date than it was in fact issued, which was July 5, 1871. The plaintiff may have been running trains for a year or more over the road before the land was earned under the statute. When the plaintiff had built and completed the road as prescribed in the statute, then, and then only, did it become entitled to the land; then, and then only, had it earned the land. It was not entitled to the land when it had laid a certain portion, or even all, of its track, and was running trains thereon. This might be done, and still the company not entitled to an acre of land. It might be running its cars for years over the entire length of its road, and yet never be entitled to any of the land. It was to be "*completed as a first-class road*," on a particular route mentioned; the track was to be " of good substantial rail, weighing not less than fifty-six pounds per lineal yard," etc. Just what is requisite to constitute a first-class railroad, we need not discuss; certainly more than laying down a track and running trains thereon. It was to secure the fulfillment of the terms and conditions mentioned in the fourth section of the act, that the next section provided that the lands should be " patented by the governor to the company as the same should be earned by the building of the road," etc., thus withholding the title from the company and retaining it in the State until the governor should be satisfied that those terms and conditions had been fully complied with. Suppose the road had been built only as a second-class road; the governor would

have been in duty bound to refuse to patent the lands to the company; or suppose a rail of forty-eight pounds to the lineal yard, instead of that required by the law, had been laid down, the same duty would have devolved upon him; and in either case, if the governor had thus refused, the company might have been running trains on their road up to this time, and yet have no right or title to an acre of this land.

That the Illinois Central Company took possession of the road under their lease, and commenced operating it before the patent was issued to the plaintiff for the land, does not prove that the road was *then completed as a first-class railroad, as prescribed in the statute;* such possession was perfectly consistent with the fact deducible from the action of the governor in issuing the patent, viz.: that the road was *not* thus completed until that time, or rather that the patent was issued immediately upon such completion.

That plaintiff executed a conveyance for one tract of land in March, 1871, if we take it as an admission by plaintiff that it then owned the land, does not help the appellant, for if plaintiff became, and was the owner of the land in fact, in March, 1871, no taxes could be levied thereon until 1872.

The conclusion therefore seems irresistible that, in respect to the time when the plaintiff had earned the land and became entitled thereto, the patent of the governor is the only satisfactory evidence. It being issued July 5, 1871, evidencing that the plaintiff then became the owner of the land, no taxes could lawfully be levied thereon until the year 1872.

Again, it seems clear to us upon the whole act of the general assembly of April 7, 1868, that it was the intention of the legislature that the plaintiff should have no right or title to, or in, any of these lands prior to the receipt of conveyances from the governor therefor, as the lands should be earned. We have already commented upon the first clause of section five, which directs the governor to patent the lands to the plaintiff, *as the same shall be earned by the building of the road.* The same section, a little farther on, provides that " *no patent* shall be issued by him for any portion of said

lands, until at least seventy-five miles of road shall be completed, and '*no patent* shall be made for any lands more than forty miles in advance of the point to which said road may be constructed from time to time.'" And again, in the same section, it provides that "*no patent* shall be made for any lands located within fifty miles of Sioux City, until said company shall have its entire road completed, except," etc. From these various provisions it is manifest that it was intended the State should hold the title and ownership of the lands until they were conveyed by the governor to the plaintiff by patent, when earned; that such title and ownership were purposely withheld in order that the plaintiff should have no right to the lands until it had complied with all the terms and conditions upon which the lands were granted by the State, and that the patent of the governor was purposely made the evidence of such compliance. So far as the evidence goes, there is none showing that the patents were not promptly made and delivered in strict compliance with the act of April, 1868. As soon as the lands were earned by plaintiff in the building of the road, according to the requirements of the statute. Since the plaintiff became owner of the lands, as evidenced by the patents, on the 5th day of July, 1871, they were not taxable until 1872, and the judgment of the district court was right and is

Affirmed.