The Iowa Falls & Sioux City R. R. Co. v. Woodbury County.

2. ATTORNEY: parties.

AFFIRMED.

---

THE IOWA FALLS & SIOUX CITY R. R. CO. v. WOODBURY COUNTY ET AL.

1. **Taxation:** RAILROAD LANDS. Lands granted under the Act of Congress of May 15, 1856, and chapter 124, Laws of the Tenth General Assembly, became subject to taxation only after they had been conveyed to the grantee by patents of the Governor of the State, in accordance with the provisions of the latter act.

2. **Evidence:** ISSUANCE OF PATENT. The patent of the Governor is evidence that the title has ceased to be in the State, and has vested in the grantee after compliance with the conditions of the grant.

3. ———: PAROL. Parol evidence is not admissible to contradict or vary the patent of the Governor, but only to show that the railroad company has been guilty of fraudulent practices to prevent the issuance of the patent.

4. ———: FRAUD. The fact of the completion of the railroad earlier than the issuance of the patent, is not evidence of fraudulent practice to prevent its issuance, for the purpose of avoiding taxation.

*Appeal from Woodbury District Court.*

MONDAY, JUNE 15.

THIS action is brought by the plaintiff to enjoin the Treasurer of Woodbury County from selling certain lands belonging to the plaintiff, situated within the county, for taxes levied thereon for the years 1869, 1870 and. 1871, on the alleged ground that such lands were not subject to taxation for those years. A temporary writ of injunction was issued, which, on final hearing, was made perpetual. The defendants appeal.

*C. H. Lewis* and *Pendleton & Baily*, for appellants.

*N. M. Hubbard* and *Isaac Cook*, for appellee.

MILLER, CH. J.—The plaintiff acquired its title to the lands in question under the Act of Congress of May 15, 1856, and

1. TAXATION: railroad lands. the Act of the General Assembly of the State of Iowa, of April 1868, being Chapter 124 of the Laws of that year. The lands were patented to the plaintiff by the State of Iowa under the last named Act, on the 5th day of July, 1871. The plaintiff, therefore, claims that its lands were not taxable until the year 1872; that they were the property of the State until conveyed to plaintiff, and as such were not subject to taxation.

On the part of defendants it is alleged that plaintiff became entitled to and had earned said lands by building and completing their road so as to render the same liable to taxation for the years 1869, 1870 and 1871,. and that the plaintiff fraudulently and with intention of depriving the county of its just and legal revenue, delayed and neglected to demand a patent for its lands in said county until long after the completion of said road.

In the case of this plaintiff v. Cherokee County (decided at the December Term, 1873), in which nearly the same question was involved as in this case, we had occasion to examine the Act of the General Assembly above mentioned.

The first section of the Act of the General Assembly above

referred to confirms an agreement entered into between the Dubuque & Sioux City Railroad Company and the plaintiff in respect to the application of the lands granted by Congress to aid in the construction of a railroad from Dubuque to Sioux City.

The second section provides the mode of adjusting the amount of land to which each company should become entitled.

The third section contains a grant of a portion of the original grant made by Congress to the Dubuque, Bellevue & Sabula Railroad Company, with certain restrictions, and provides for their selection by the Governor.

The fourth section is as follows: "That so much of said land grant as is applicable to the uncompleted portion of the road as aforesaid, west of Iowa Falls, excepting the land hereby granted to said Dubuque, Bellevue & Sabula Railroad Company, is hereby granted to and conferred upon the said Iowa Falls & Sioux City Railroad Company, subject to the terms and conditions of the Act of Congress granting said lands, dated the fifteenth day of May, A. D. 1856, and the act amendatory thereto, and the act of Congress passed the present session; and also subject to the terms and conditions of this act as herein expressed, as follows, to-wit: The road shall be completed as a first class road on the route now surveyed, located and partly graded through Webster City and Fort Dodge, and the depot buildings shall be erected on the grounds heretofore donated by the people of said towns for that purpose, and shall be completed thence to Sioux City, which route shall be at all points within the limits of said land grant. The track of said road shall be laid with a good substantial rail, weighing not less than fifty-six pounds per lineal yard. The road shall be completed to Fort Dodge by the first of July, 1869, the time now fixed by Act of Congress; and the remainder before the first of January, 1872; and said road, when any twenty miles shall be completed, shall be subject to the lease of the Illinois Central Railroad Company and shall be operated as one continuous and unbroken through line of railroad from Dubuque to Sioux City."

"Section 5. Said lands so granted as aforesaid to the Iowa

Falls & Sioux City Railroad Company shall be patented by the Governor to said company as the same shall be earned by the building of said road, but no patent shall be issued by him for any portion of said lands until at least seventy-five miles of road shall be completed, and no patent shall be made for any lands more than forty miles in advance of the point to which said road may be constructed from time to time, as provided by said Act of Congress. No patent shall be made for any lands located within fifty miles of Sioux City, until said company shall have its entire road completed to Sioux City, except for such road as said company may cause to be built and operated from Sioux City eastward, and when said company shall have forty miles of said road built and operated from Sioux City eastward, then this restriction shall cease and such lands may be patented for any road built by said company. * * And in case any of said lands hereby granted are now, and were on the first day of January last, occupied by actual settlers, residing thereon and improving the same, upon such settler making proof to the satisfaction of the Register of the State Land Office of such settlement and improvement, he shall be entitled to purchase not exceeding one quarter section of land of the State at the rate of $2.50 per acre, and when *such* land shall have been earned by the extension of said road, upon the payments to said company of the said sum, the Governor shall execute a patent to such actual settler for said land."

In the case of this plaintiff v. Cherokee county, decided at the December term, 1873, we had occasion to examine, and to 2. EVIDENCE: some extent intepret this statute. It was there issuance of patent. said that "it seemed clear to us, upon the whole act * * * * that it was the intention of the legislature that the plaintiff should have no right or title to or in any of these lands prior to the receipt of conveyances from the Governor therefor, as the lands should be earned." And after referring to the various provisions of the fifth section, it is further said that "from these provisions it is manifest that it was intended the State should hold the title and ownership of the lands until they were conveyed by the Governor to the plaintiff by patent when earned; that such title and ownership

were purposely withheld in order that the plaintiff should have no right to the lands until it had complied with all the terms and conditions upon which the lands were granted by the State, and that the patent of the Governor was purposely made the evidence of such compliance." In that case the question of the admissibility of parol evidence to contradict or vary the effect of the Governor's patent, issued in pursuance of the act, was not decided. Such evidence was, however, admitted, and we held that the patent was "at least *prima facie* evidence that the patent was issued *as soon as the land was earned*," and that the parol evidence did not overcome this *prima facie* case. We have never yet decided that the effect of the Governor's patent, or certificate, where that was required in order to acquire title to land under any of the Congressional grants, could be varied or contradicted by parol evidence. See *Goodrich v. Beamon,* Dec. term, 1873. We are of opinion that such evidence is inadmissible except to show, as alleged in this case, that the railroad company has been guilty of fraudulent practices, whereby it has prevented the issuance at the proper time of patents to it of lands earned in the construction of its road. The statute has made the patent of the Governor the evidence that the patentee has earned and become entitled to the land. Although the language of the grant to the plaintiff is *in presenti,* yet it is clear that it was intended no right or title should pass to the plaintiff to any of the lands except upon the terms and conditions therein expressed, that the ownership of the land was retained in the State until those terms and conditions should be complied with by the plaintiff, and that the State conferred the ownership of the lands upon the plaintiff by conveying the same to it by patent, and in no other manner. The act made it the duty of the Governor to thus convey the lands to the plaintiff as they should be earned by it, and no faster. The act therefore makes the patent of the Governor the legal evidence that the lands were earned by the grantee, and that they were conveyed to it as soon as earned. Of course the defendant is not concluded by the patent from showing that the plaintiff by means of fraudulent acts or representations,

3. ————:
parol.

prevented the issuance of the patent by the Governor until long after the lands had been earned and the plaintiff entitled to a patent therefor; and this seems to be the understanding of appellants in making their answer, for they make this theory the basis, in their pleading, for the admission of parol evidence of the time when the lands were earned. And this brings us to the question whether this plea of fraud is sustained by the evidence in the case. In respect to this we are unable to find that the alleged fraud has been proven. There is evidence tending to show that the railroad was completed sooner than the time the patent was made, but this is all. There is nothing to show that plaintiffs did anything to delay the issuance thereof. There is no evidence even that the plaintiff did not sooner apply for a patent for the land, or that it did any act to mislead or deceive the Governor in the premises. The statute did not expressly require that the plaintiff should apply to the Governor for patents for lands as they were earned, nor did it authorize the Governor to issue patents only on such application. On the contrary, the Governor could at any time, on being satisfied that any of the lands included in the grant were earned by the company, have conveyed the same to it without any application therefor, so that mere failure on the part of the company to apply to the Governor for such conveyance, would not necessarily prevent its issuance. Unless the plaintiff, by some fraudulent act or representation, prevented the earlier issuance of the patent, which is not shown, its right to the land dates from the time the patent was made. Previous to that time the land belonged to the State, and was not taxable. It became taxable for the year 1872, but not before.

The judgment of the court below will be

AFFIRMED.