## THE SIOUX CITY & ST. PAUL R. CO. v. THE COUNTY OF OSCEOLA.

1. **Public Lands:** RAILROAD GRANT. The Act of Congress of May 12, 1864, granting certain public lands to the State to aid in the construction of a railway, did not specify any beneficiary corporation, but conferred them upon the State as trustee, charged with the duty of appropriating them for the purpose and under the conditions specified in the act. The title was not to pass until the issuance of the patents, after they had been earned by the construction of certain specified portions of the road, and prior to that the lands could not be disposed of nor encumbered.

2. ———: ———: STATE LEGISLATION. Chapters 134 and 144, Acts of the Eleventh General Assembly, conferred upon the Sioux City and St. Paul Railway Company the title to the lands embraced in the Act of Congress, conditioned upon its compliance with the conditions of the grant, which was to be determined by subsequent legislation.

3. ———: TAXATION. Chapter 34, Acts of the Fifteenth General Assembly, directing the governor to certify to the company the lands held by the State in trust for its benefit, vested in it a perfect legal title thereto, and they thereupon became taxable to it. An assessment and levy of taxes upon the lands for any years previous to the passage of this act was illegal and void.

*Appeal from Osceola District Court.*

THURSDAY, JUNE 8.

ACTION in chancery to restrain the collection of certain taxes upon lands of the plaintiff, and to declare the same illegal and void. Upon the final hearing of the cause, plaintiff's petition was dismissed. It now appeals to this court.

*J. H. Swan,* for appellant.

A judgment rendered by fraud and collusion is a nullity. (Freeman on Judgments, 99, 334-5-6; Kerr on Fraud, 293-4.) The neglect of the officers of the county to discharge their duty constitutes a fraud upon the tax-payers. (2 Pars. on Con., 88; Willard's Equity, 147; Kerr on Fraud, 42.) The bonds, being in excess of the limit, are void for want of authority to issue them, even in the hands of innocent purchasers. (Western Jurist, Jan. 1872.)

*R. J. Chase*, for appellees.

A corporation created by and transacting business in a state is regarded as an inhabitant and citizen thereof, and will be bound by a suit affecting its interest the same as a natural person. (*Park v. Nichols*, 4 Bissell, 315; *C. & N. W. R. Co. v. Whiton*, 13 Wall., 270; *Louisville etc. R. Co. v. Letson*, 2 How., 497.) A citizen is bound by a judgment against the county, and cannot re-litigate a question determined therein. (*Muscatine v. R. R. Co.*, 1 Dill. C. C., 536.) A general allegation of fraud is bad on demurrer. (*Hale v. Walker*, 31 Iowa, 354; *Kinsell v. Feldman*, 28 Id., 497.) The petition should show why the plaintiff did not intervene in the suits wherein it is charged the supervisors fraudulently failed to defend. (*Tredway v. S. C, & St. P. R. R. Co.*, 40 Iowa, 526.) The court will not determine the validity of county bonds which are in the hands of *bona fide* holders, in a suit to which the bondholders are not made parties. (*Burhop v. Milwaukee*, 18 Wis., 431.) A court of equity will not enjoin a tax because of irregularities in levying, extending or returning the same. (*C. R. & M. R. R. v. Carroll Co.*, 41 Iowa, 153; High. on Inj., § 355; *West v. Ballard*, 32 Wis., 168; *Dows v. Chicago*, 11 Wall., 108; *Conway v. Younkin*, 28 Iowa, 295.)

Beck, J. — I. The taxes in question were levied by the County of Osceola, for the year 1873, upon lands of the Sioux City & St. Paul Railroad Company, acquired under certain grants from Congress and the State to aid in the construction of its railroad. The leading and controlling question involved in the case is this: Did the plaintiff, at the time the taxes were levied, hold such an interest or title in the lands that they were subject to taxation? The solution of the question involves the consideration and construction of the legislation, both national and state, under which the lands were granted to the plaintiff.

II. The lands in question were granted to the State by Act 1. PUBLIC lands : railroad grant. of Congress of date May 12, 1864. The parts of this act necessary to be considered in determining

the question before us are in the following language: Section first provides, "That there be and is hereby granted to the State of Iowa, for the purpose of aiding in the construction of a railroad from Sioux City, in said State, to the south line of the State of Minnesota,          *          *          *          * every alternate section of land, designated by odd numbers for ten sections in width on each side of said road."          *          *          *          * Section 3 enacts, "That the lands hereby granted shall be subject to the disposal of the legislature of Iowa, for the purposes aforesaid and no other."

· Section 4 provides, "That the land hereby granted shall be disposed of by said State, for the purposes aforesaid only, and in manner following, namely: When the governor of said State shall certify to the Secretary of the Interior that any section of ten consecutive miles of          *          * said road is completed in a good, substantial and workmanlike manner, as a first-class railroad, then the Secretary of the Interior shall issue to the State patents for one hundred sections of land for the benefit of the road having completed the ten consecutive miles as aforesaid. When the governor of said State shall certify that another section of ten consecutive miles shall have been completed as aforesaid, then the Secretary of the Interior shall issue patents to said State in like manner, for a like number; and when certificates of the completion of additional sections of ten consecutive miles          * * of said road are from time to time made as aforesaid, additional sections of land shall be patented as aforesaid until said road          *          * is completed, when the whole of the lands hereby granted shall be patented to the State for the uses aforesaid, and none other.          *          *          *          *. * * * * Provided further, That if the said roads are not completed within ten years from their several acceptance of this grant, the said lands hereby granted and not patented shall revert to the State of Iowa for the purpose of securing the completion of said roads within such time, not exceeding, and upon such terms as the State shall determine: And provided further, That said lands shall not in any manner be disposed of or encumbered, except as

the same are patented under the provisions of this act; and should the State fail to complete said roads within five years after the ten years aforesaid, then the said lands, undisposed of as aforesaid, shall revert to the United States."

III.   It will be observed that the lands, by this act, are granted to the State of Iowa, to be used and appropriated for the purpose prescribed.   The act does not name or indicate a person or corporation to whom the State shall convey the lands.   The State is to acquire title to the lands in the manner prescribed.   Upon completion of sections of the road, patents are to be issued to the State for specified quantities of the lands.   They cannot be disposed of or encumbered until the State acquires the full title by patent.   The act contemplates the acquisition of the title by the State for the purposes prescribed; the State thus becomes a trustee, charged with the duty of appropriating the lands to the object contemplated by Congress in making the grant. *Tucker v. Ferguson*, 22 Wal., 527.

IV.   The State acquires no title to any part of the lands covered by the grant until the patent therefor, as provided by the act, issues.   While a legislative act, in the nature of a grant, is effective to vest the title of lands in the grantee without farther assurance (*Courtright v. C. R. & M. R. R. Co.*, 35 Iowa, 387), yet if an act granting lands provides that the title shall pass upon the issuing of a patent, and withholds from the grantee rights inseparable from ownership, it cannot be claimed that title is acquired under the grant, in the absence of the patent provided for by the grant itself.   We conclude, therefore, that the State acquired no title to the lands, or any part thereof, until the patent provided for by the act above was issued.

It will be observed that this statute is unlike the act of May 15, 1856, whereby Congress granted lands to the State to aid in the construction of certain railroads, which makes no provision for the issuing of patents to vest the title of the lands thereby granted in the State.   It has been held in *Courtright v. C. R. & M. R. R. Co.*, *supra*, that the act last named

operates, without a patent, to vest title in the State to the lands covered thereby.

V. We now turn to the consideration of the State legislation affecting these lands. By chapter 134, Acts Eleventh 2. ——: ——: General Assembly, the lands in question were state legisla-tion. granted to plaintiff in this action upon the terms and conditions specified therein, which pertain to the manner of the construction of the railroad for which the lands were originally granted by Congress. Chap. 144, Acts of the same General Assembly, provides that, " Whenever any lands shall be patented to the State of Iowa in accordance with said act of Congress [the act of May 12, 1866, above referred to], the said lands shall be held by the State in trust for the benefit of the railroad company entitled to the same by virtue of the act of Congress, and to be deeded to said railroad company as shall be ordered by the legislature of the State, at its next regular session, or at any session thereafter." § 2.

VI. Under these statutes the plaintiff acquired its right to and title in the lands in question in this action. Upon the performance of the terms and conditions prescribed in the first act, plaintiff acquired a right to the land. These conditions, as we have said, pertain to the manner of the construction of the road and its completion, as contemplated by the act of Congress making the grant. The act last named above (Chap. 144), provides that the General Assembly shall order the lands to be deeded to plaintiff. Such action, however, would only be had upon the legislature determining that the terms and conditions of the grant had been performed by plaintiff. The action of the General Assembly, therefore, determines the question of plaintiff's right. A patent or conveyance from the State would vest in plaintiff the title to the lands, but without legislative action contemplated by chapter 144, Acts Eleventh General Assembly, it could not issue. It is clear that, without this legislative action determining that the conditions of the grant had been performed, the lands did not become the property of plaintiff. Whether after such action a patent was necessary to pass the title, or whether such

legislation would have had that effect without a patent, we need not inquire.

The statutes are similar in their provisions to the acts interpreted in *Iowa Falls and Sioux City R. Co. v. Cherokee County*, 37 Iowa, 483; *Goodrich v. Beaman*, Id., 563; *Iowa Falls and Sioux City R. Co. v. Woodbury County et al.*, 38 Iowa, 498, and *McGregor & M. R. R. Co. v. Brown*, 39 Iowa, 655. In these cases we held that, as the performance of the conditions annexed to the grants by the State was left to the determination of the Governor of the State, the railroad companies acquired no property in the land granted until the Governor had issued a patent, or certificate, as required by the statute, showing that the corporations had earned the lands by the completion of the road, or parts thereof, as prescribed by the conditions of the grant. In the two cases last named we held that it was not competent to contradict the patent, which is evidence of the time when the railroad company acquired property in the land, by proof showing that the conditions of the grant had been performed — the lands had been earned at an earlier day. But evidence is admissible for the purpose of establishing fraudulent acts of the railroad company, if any exist, in delaying the execution of the patent for the purpose of escaping taxation of lands for which they are entitled to a patent, or which they have earned under the grant.

VII. Having settled the construction of the statutes involved in the case, and the propositions of law arising 3. ——: taxation. thereon, it only remains to apply them to the facts of the case. Those that have not been stated may be briefly rehearsed.

A part of the lands in question were patented to the State October 16, 1872, other portions June 17, 1873, and the remainder January 25, 1875. By act of the General Assembly, approved March 13, 1874, (Chap. 34, Revision, Acts 15th Gen. Assembly), the Governor was authorized and directed to "*certify*" to plaintiff all the lands held by the State in trust for its benefit. Whether any patent or other assurance was executed by the Governor under this act, is not shown by the

record before us.   Of course nothing of the kind was issued to plaintiff before the enactment of this statute.

It follows from the doctrine heretofore recognized by this court and above announced, that plaintiff acquired no property in the lands which is subject to taxation prior to this statute.   The lands were, therefore, not taxable for the year 1873, and the assessment and levy of taxes for that year are illegal and void.

VIII.   It will be readily discovered that our conclusions in this case are not in conflict with the doctrines of the court in the following cases, cited by defendant's counsel, and probably others under the same or like statutes, viz: *B. & M. R. R. Co. v. Hayne*, 19 Iowa, 137; *Iowa Homestead Co. v. Webster Co.*, 21 Iowa, 221; *Dubuque & P. R. Co. v. Webster Co.*, Id., 235; *Stryker v. Polk Co.*, 22 Iowa, 131; *Cedar Rapids & M. R. Co. and Iowa R'y Land Co. v. Carroll Co.*, 41 Iowa, 153.

The grants of lands involved in each of these cases do not contain the restrictions and conditions found in the State statute under which plaintiff derives its title to the lands in controversy.   They are of such character and contain such provisions that the respective corporations acquired taxable property in the lands granted to each respectively, as the several railroads were completed according to the terms and conditions of the grant.   The several railroad companies became the owners of a *taxable interest* in the lands as they were earned, under the provisions of the respective statutes applicable to each case.

The decree of the District Court is reversed.   A decree in accord with this opinion will be entered in this court, or, at the option of plaintiff, the case will be remanded for a like decree to be entered in the court below.

REVERSED.