BOWNE & SLEEPER, Appellees, v. WILLIAM H. BILSLAND *et al.*, Appellants.

**Railroad Land Grant:** CONDITIONS: NON-PERFORMANCE: TITLE. By an act of congress approved in May, 1864, the United States granted to the state of Iowa certain lands in said state to aid in the construction of a railroad from Sioux City to a point on the south line of the state of Minnesota, the lands to be subject to the disposal of the legislature for that purpose and no other. Patents for one hundred sections of said lands were to be issued to said state, for the benefit of the railroad company entitled thereto, only when the governor of said state should certify to the secretary of the interior that a section of ten consecutive miles of such road had been completed, and in like manner for each section of ten consecutive miles, but if said roads were not completed within ten years from the date of their acceptance of the grant, the lands thereby granted, and not patented, were to revert to the state for the purpose of securing the completion of said roads, and if the state failed to complete said roads within five years thereafter, then the lands undisposed of as aforesaid were to revert to the United States. By chapter 134 of the acts of the general assembly of 1866, the state accepted said grant, and conferred the lands granted upon a certain railroad subject to the conditions named in the grant, which grant was accepted by the railroad on September 20, 1866. *Held*, that the grant did not operate to vest the legal title to the lands in the railroad company, and that the road not having been completed September 20, 1881, all of said lands not then patented in the manner aforesaid, nor otherwise disposed of, reverted to the United States.

*Appeal from O'Brien District Court.*—Hon. C. H. Lewis, Judge.

Monday, June 1, 1891.

Action to recover for trespass by the defendants in wrongfully entering upon lands owned by the plaintiffs, and cultivating the same. The cause was tried without a jury, and judgment was rendered for the plaintiff. The defendants appeal.—*Reversed.*

*McCallum, Hughes & Hastings,* for appellants.

*O. M. Barrett* and *S. A. Calvert,* for appellees.

Beck, C. J.—I. Defendants deny the allegations of the plaintiffs' petition, and allege that they entered upon and held possession of the land under a homestead settlement, with the intent to acquire the lands under the homestead laws of the United States, and made application to the proper United States land officers to enter the land as homesteads; that the land officers refused to permit the entry, though, as the defendants allege, the land was subject to the homestead entry; that thereupon the defendants appealed from the decision; and the appeal has not been determined, but is pending before the commissioner of the general land-office; that the defendants' possession of the land is, and always has been, under their homestead settlement and claim; and that the plaintiffs have no patent or certificate for the land, and hold no legal or equitable title thereto. Other defenses, as another action pending, and a counterclaim for damages accruing by reason of the wrongful and malicious suing out of an attachment in this case, need not be more particularly mentioned. The issues arising upon the allegations of the answer which we have recited involve the question as to whether the plaintiffs have the right of

possession to the land. The plaintiffs claim under a railroad grant, and the defendants under the homestead statute of the United States. The consideration of the statutes pertaining to this grant, and the homestead claim of the defendants, demand 'our attention.

II. The plaintiffs' claim is based upon the act of congress of May 12, 1864, granting lands to the state of Iowa to aid in the construction of railroads therein specified. This statute, so far as its provisions need be considered in this case, is as follows:

"Sec. 1. That there be, and is hereby, granted to the state of Iowa, for the purpose of aiding in the construction of a railroad from Sioux City, in said state, to the south line of the state of Minnesota, at such point as the said state of Iowa may select, between the Big Sioux and the west fork of the Des Moines river, also to said state, for the use and benefit of the McGregor Western Railroad Company, for the purpose of aiding in the construction of a railroad from a point at or near the foot of Main street, South McGregor, in said state, in a westerly direction, by the most practicable route, on or near the forty-third parallel of north latitude, until it shall intersect the said road running from Sioux City to the Minnesota state line, in the county of O'Brien, in said state, every alternate section of land designated by odd numbers, for ten sections in width, on each side of said roads; but, in case it shall appear that the United States have, when the lines or routes of said roads are definitely located, sold any section, or any part thereof, granted as aforesaid, or that the right of pre-emption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected, for the purpose aforesaid, from the public lands of the United States nearest to the tiers of sections above specified; so much land,

in alternate sections or parts of sections designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved or otherwise appropriated, or to which the right of homestead settlement or pre-emption has attached as aforesaid; which lands thus indicated by odd numbers and sections, by the direction of the secretary of the interior, shall be held by the state of Iowa for the uses and purposes aforesaid; provided, that the lands so selected shall in no case be located more than twenty miles from the lines of said road: provided, further, that any and all lands heretofore reserved to the United States, by any act of congress, or in any other manner, by competent authority, for the purpose of aiding in any object of internal improvement or other purpose whatever, be, and the same are hereby, reserved and excepted from the operation of this act, except so far as it may be found necessary to locate the routes of said road through such reserved lands, in which case, the right of way shall be granted subject to the approval of the president of the United States.

"Sec. 3.   That the lands hereby granted shall be subject to the disposal of the legislature of Iowa for the purpose aforesaid, and no other.

"Sec. 4.   That the lands hereby granted shall be disposed of by said state for the purposes aforesaid only, and in manner following, namely:   When the governor of said state shall certify to the secretary of the interior that any section of ten consecutive miles of either of said roads is completed in a good, substantial and workmanlike manner, as a first-class railroad, then the secretary of the interior shall issue to the state patents for one hundred sections of land for the benefit of the road having completed the ten consecutive miles as aforesaid.   When the governor of said state shall certify that another section of ten consecutive miles shall have been completed as aforesaid, then the secre-

tary of the interior shall issue patents to said state in like manner, for a like number; and, when certificates of the completion of additional sections of ten consecutive miles of either of said roads are from time to time made as aforesaid, additional sections of lands shall be patented as aforesaid, until said roads, or either of them, are completed, when the whole of the lands hereby granted shall be patented to the state for the uses aforesaid, and none other; provided, that, if the said McGregor Western Railroad Company or assigns shall fail to complete at least twenty miles of its said road during each and every year from the date of its acceptance of the grant provided for in this act, then the state shall resume said grant, and so dispose of the same as to secure the completion of a road on said line, and upon such terms, within such time as the state may determine; provided, further, that, if the said roads are not completed within ten years from their several acceptance of this grant, the said lands hereby granted, and not patented, shall revert to the state of Iowa for the purpose of securing the completion of the said roads within such time, not to exceed five years, and upon such terms, as the state shall determine; and, provided, further, that said lands shall not in any manner be disposed of or incumbered, except as the same are patented under the provisions of this act; and, should the state fail to complete said roads within five years after the ten years aforesaid, then the said lands undisposed of as aforesaid shall revert to the United States."

The state, by an act of the general assembly (Acts of 1886, ch. 134), accepted the grant made by congress in the foregoing enactment, subject to the condition therein, and conferred the land granted to the Sioux City & St. Paul Railroad Company, subject to the conditions and restrictions of the grant, and the terms provided in the act relating to the character of the road to be constructed, and other matters, which need not

be stated. Chapter 34, Acts of 1874, directs and authorizes the governor "to certify to the Sioux City & St. Paul Railroad Company any and all lands which are now held by the state of Iowa in trust for the benefit of said railroad company in accordance with the provisions of section 2 of chapter 134 (p. 143) of the Laws of the Eleventh General Assembly." In 1873 a patent was issued by the United States conveying the land granted to the state "for the use and benefit of the Sioux City & St. Paul Railroad Company and its assigns, forever." In an action in the United States circuit court for the district of Iowa between the Sioux City & St. Paul Railway Company and others, and the Chicago, Milwaukee & St. Paul Company, involving the claims and rights of the parties in the action to the land, their conflicting claims and rights were settled, and a partition of some of the lands was made. But, as the state was not a party to the action, nor were the defendants in this suit, their rights were not affected by it. This case was finally decided by the United States supreme court. *Sioux City & St. P. Ry. Co. v. Chicago, M. & St. P. Ry. Co.,* 117 U. S. 406; 6 Sup. Ct. Rep. 790. It demands no further mention.

The Sioux City & St. Paul Railway Company entered into a contract to convey the lands involved in the action, which are a part of the lands granted under the federal and state statutes referred to above. The defendant insists that this contract covers a part only of the land, and, to show that it covers all, the plaintiffs filed an amended abstract, which the defendants deny. We need not consume time with this controversy, as it becomes wholly unimportant in the view we take of the case. By a statute of the state (Acts of 1882, ch. 107,) the lands and the rights thereto, covered by the grants in question, so far as they have not been earned by a compliance with the terms of the grant, are reserved and declared to be as absolutely vested in the

state "as if the same had never been granted to the said railroad company." Chapter 71, Acts of 1884, relinquishes and conveys to the United States all the lands and rights resumed by and under the preceding act, excepting lands in Dickinson and O'Brien counties. The lands involved in this case, being in O'Brien county, do not come under the provisions of this statute. The secretary of the interior, in a proper case, decided the land in question, and other lands claimed by the railroad company under the congressional grant in question, were unearned and forfeited, and an action has been or is about to be commenced, by order of the secretary of the interior, to cancel all claims or rights of the railroad company to the land. Certain evidence was introduced as to the value, rental value, the production of the land, etc., pertaining to the measure of damage. Questions arising thereon, it will be readily seen, need not be considered, in the view we take of the case. It may be remarked in this connection that there is no evidence showing, or tending to show, that the railroad company earned the land in controversy under the grant; that it performed the work in building the road which, under the terms and condition of the grants (federal and state), would entitle it to demand that the lands be conveyed to it by patent or otherwise. In the opinion of the secretary of the interior in the case before us, involving the right of the railroad company to the land, which is in evidence in this case, it is found and held that the lands in question, including the lands involved in this suit, are unearned, and, therefore, the grant never attached to them.

III. The questions for determination in this suit involve the right and title of the railroad company to the land under the grants and acts of the federal and state governments, without regard to the fact of the non-performance of the terms of the grant,—the failure to earn the land by the company. Counsel for the

plaintiff states, in an argument adopted in this, though filed in another case (*Ayers v. Kolstrom*, 50 N. W. Rep. 550), involving the same questions presented in this one, the following position, upon which he bases the right of plaintiff to recover: "*First.* At the outset of this argument it may be conceded that, unless the plaintiff has established a valid and subsisting interest in the land in question, and a right to the immediate possession thereof, he cannot recover in this action." "That interest, whether legal or equitable, must be a valid and subsisting one, and coupled with the right to present possession. It must be a better title and right of possession than that of the defendants."

We do not present the quotation from counsel's argument as the correct rule of law applicable to the case. Indeed, we think it is incorrect, but its error need not be pointed out, for, as we shall show, the evidence fails to establish that the railroad company holds, or ever held, any valid and subsisting interest in the lands, legal or equitable, either with or without the right of present possession. The first section of the act of congress of May 12, 1864, above quoted, grants the land in question to the state "for the use and benefit of the railroad company for the purpose of aiding in the construction of a railroad," the route of which is specified in the act. Section 3 provides "that the lands hereby granted shall be subject to disposal by the legislature of Iowa for the purpose aforesaid, and no other." The fourth section imposes restrictions upon the disposal of the lands, to the effect that the lands shall be patented to the state as the work of building the railroad progresses, thus conveying specified quantities of land when given distances of the railroad should be built. It provides that, in case of a failure to complete the road as prescribed in the act, the state shall resume the grant, and dispose of the

lands to secure the building of the road; and it is further provided "that the lands shall not in any manner be disposed of or incumbered, except as the same are patented under the provision of the act; and, should the state fail to complete the road within five years after the ten years aforesaid, then the said lands, undisposed of as aforesaid, shall revert to the United States."

It does not clearly appear from the abstract in the case, if at all, when the Sioux City & St. Paul Railway Company accepted the grant made by the federal and state statutes herein quoted and referred to; but counsel for the plaintiffs, in their argument, submitted in both this cause and in *Ayers v. Kolstrom*, involving the same questions as in this case, state that the acceptance was September 20, 1866. It will be observed that, under section 4 of the act of congress of May 12, 1864, if the railroad should not be completed in fifteen years from that date, the grant reverts, under the provision of the act, to the United States. This section gives ten years to the railroad company to complete the road, and provides that, upon the failure of the company to build it in that time, the lands not patented shall revert to the state, and, if the state fail to complete the road within five years thereafter, the lands undisposed of shall revert to the United States. The railroad not having been completed September 20, 1881, the lands, not patented or otherwise disposed of, reverted to the United States. The state, in order to effectuate the conditions of the grant, default in the performance whereof terminated the grant, resumed the right to the land conferred upon the railroad company by chapter 107, Acts of 1882, and by chapter 71, Acts of 1884, reconveyed the lands to the United States, but the lands in question in this suit, being in O'Brien county, are excepted from the operation of the last statute by the provision therein.

IV.  A brief consideration of the statutes and decisions of this court will make it absolutely plain that the grants, federal and state, in question, did not operate to vest the legal title to the lands in the railroad company.  The grant is conditional, dependent upon the building of the road, and the legal title to the lands can only be passed to and acquired by the railroad, as they are earned by the construction of the road.  The statutes do not alone, if the lands are unearned, operate to pass the legal title thereof to the railroad company.  That title is not acquired until the conditions upon which the grant is made have been performed.  This construction has been settled by express decisions of this court in cases wherein construction of these very statutes was brought in question.  *Sioux City & St. P. Ry. Co. v. Osceola Co.*, 43 Iowa, 318; s. c., 50 Iowa, 177.  See, sustaining the same doctrines: *Iowa Falls & S. C. Ry. Co. v. Cherokee Co.*, 37 Iowa, 483; *Goodrich v. Beaman*, 37 Iowa, 563; *Iowa Falls & S. C. Ry. Co. v. Woodbury Co.*, 38 Iowa, 499; *McGregor & M. R. Ry. Co. v. Brown*, 39 Iowa, 655.  The act of congress grants the lands to the state for a specific purpose, and provides that title to and interest in the lands may be transferred to the railroad company, as prescribed in the act, upon the completion of parts of the road; but it is expressly declared that the land not earned by the railroad company shall revert to the United States.  Now, these statutes do not provide for a forfeiture of lands and rights acquired by the railroad company, but that it shall acquire no legal title to the lands until they are earned.  The state raised no claim to unearned lands, but, by a legislative act, reconveyed such lands to the United States.  These considerations lead us to the conclusion that the plaintiffs have failed to show that they acquired legal title or right of possession in and to the lands

under their contracts with the railroad company. They cannot, therefore, recover in this action.

V. We do not determine that the plaintiff or the railroad company are not entitled to lands which were reserved by the state, and not certified or conveyed to the United States. The evidence before us fails to show that the lands in question are a part of such lands. Other questions, so ably argued by counsel, need not be discussed, as the points we determine are decisive of the case.

The judgment of the district court is REVERSED.