LITTLE ROCK *v.* FITZGERALD.

Opinion delivered October 27, 1894.

*Sidewalk pavement—Liability of property-owner.*

> Under the act of March 21, 1885, sec. 3, which gives to cities of the first class power to require owners of real estate " to build and maintain suitable pavement or sidewalk improvements," such cities have no power to require property owners, before laying pavements, to remove embankments or fill in depressions, wherever necessary to bring the grade of the sidewalk to the established grade of the street, and an ordinance for the laying of a pavement in a prescribed territory which imposes upon a portion thereof the burden of doing substantial grading is, as to the locality thus affected, unreasonable and void.

Appeal from Pulaski Circuit Court.

WILBUR F. HILL, Special Judge.

STATEMENT BY THE COURT.

The act of March 21, 1885, provides, sec. 3: "That, in order to better provide for the public welfare, safety, comfort and convenience of their inhabitants, the following enlarged and additional powers are hereby conferred upon cities of the first class, viz: *First.* To regulate the use of sidewalks, and all structures and excavations thereunder, and to require the owner or occupant of any premises to keep the sidewalks in front or alongside the same free from obstruction, and to build and maintain suitable pavement or sidewalk improve-

ments therealong, whenever the same may become necessary to the safety or convenience of travel, and to designate the kind of sidewalk improvement to be made and the kind of material to be used by such owner or occupant, and the time within which such improvement is required to be completed.   Provided, the kind and character of sidewalk improvement for the same street and block shall be uniform.   Such sidewalk improvement shall be ordered either by a general ordinance for all property owners or occupants on a certain street or streets, or within a certain quarter where the necessity therefor is general to that extent, or by a resolution or order adopted by the city council, and notice served upon the particular individuals owning or occupying premises where the special necessity exists, and in either case the city shall have power to enforce obedience to such sidewalk ordinance, order, resolution or notice by the imposition of fines upon such owner or occupant failing or refusing to obey the same, upon conviction thereof in the police court, in like manner and with like consequences and effect as for a violation of any other ordinance of such city, and each day that such failure or refusal is continued shall constitute a separate offense ; and in case such sidewalk improvement shall, after the owner, or his agent, upon notice has failed to fix the same, be constructed by an occupant who holds the premises as a tenant or lessee, he shall have the right to deduct the cost thereof from the rent that may be due or to become due from him, or to hold the possession of the premises for such time as the rental value thereof shall be sufficient to re-imburse him for such cost ; but nothing herein contained shall be so construed as to prevent such city from proceeding by civil action or in any other manner provided by existing laws.''

Accordingly, the city council of the city of Little Rock passed Ordinance No. 81, which provides :    '' Whereas,

it has become necessary for the safety and convenience of travel upon the streets of said city of Little Rock that sidewalks be built, constructed and maintained; therefore, be it ordained by the city council of the city of Little Rock: Sec. 1. That the owner or owners respectively, and in their default the tenants or occupants, by lease, of each and every lot or block or any part thereof, abutting on any street in the city of Little Rock are required to build, construct and maintain hereafter, a sidewalk along each and every lot or block or part thereof held by them where the same abuts upon any street in the said city, of the kind and material as by this ordinance required." Sec. 2 names the streets on which sidewalks are to be built, and designates the kind of material to be used on these streets, and provides that the sidewalks are to be "properly laid, well built, subject to the approval of the city engineer." Sec. 4 provides " that all the sidewalks mentioned in this ordinance shall be built, constructed and maintained at the proper grade established by the city engineer" and specifies the width for the sidewalks. Sec. 5 makes a failure or refusal to comply with the provisions of the ordinance within a certain time a misdemeanor, and fixes the penalty, upon conviction in the police court, at a fine of two dollars and fifty cents, each day's failure or refusal constituting a separate offense.

The defendant, Edward Fitzgerald, was fined in the police court for a violation of this ordinance. He appealed to the circuit court, where he was acquitted, and the city appealed to this court.

The cause was tried upon the following facts as agreed to by the parties: "*First*, The defendant is the owner of the property in block 299 abutting on Water street in the city of Little Rock, and said block is not in the fire limits. *Second*, At the time of the beginning of this prosecution the city of Little Rock had fixed the

grade of Water street in front of said property by ordinance duly passed. *Third*, The defendant, by ordinance duly passed, was required to construct and maintain in front of his property a sidewalk according to the terms of the ordinance. *Fourth*, That, at the time of the beginning of this prosecution, the defendant had not complied with said ordinance, although duly notified to do so by the proper authorities. *Fifth*, That, before the defendant could lay and maintain a sidewalk on the grade established by the plaintiff, it would be necessary to excavate about 150 cubic yards of earth, in order to reduce the sidewalk to the grade, and that the cost of such excavation would amount to thirty-five cents per cubic yard unless the contractor could sell the dirt, in which case the cost would be reduced to ten or fifteen cents per cubic yard. That the profile made by G. P. C. Rumbough shall be taken as evidence in this case. *Sixth*, The territory east of Cross to Gaines street on Water street is mostly upon grades subject to ordinary cuts and fills, and on portions of Water street east of Cross there are no cuts or fills necessary. The sidewalk in front of defendant's premises is now in its natural state."

There was proof, also, that, on the north side of Water street, opposite defendant's property, it would be necessary to fill in seven or eight feet in order to build a sidewalk, and to make an embankment of twenty-two feet wide at the base. On the south side of defendant's block on Markham street a cut of ten or twelve feet would be necessary to reduce the sidewalk to the grade. The owners of property on north side of Water street opposite defendant's property had not built sidewalks, and there were no prosecutions against them for failing to do so.

*J. W. Blackwood*, City Attorney, for appellant.

Sec. 3, act March 21, 1885, p. 96, gives cities the necessary power. The power to.require *grading* is necessarily implied. The law was held constitutional in 49 Ark. 199. The only limitation placed upon it was that the ordinance should be reasonable.

*Sterling R. Cockrill* and *George H. Sanders* for appellee.

1. The ordinance makes the ownership of real property which is not on the grade established by the council a criminal offense if the owner is not pecuniarily able to grade it to the city's requirement. Poverty is thus made a crime. 43 N. W. 923; 58 Wis. 144; 111 Ill. 532.

2. *Grading* does not fall within the province of a police regulation. 49 Ark. 199; 16 Pick. 504; Cooley, Taxation, 588; 111 Ill. 537.

3. The ordinance operates unequally, and is void. 49 Ark. 199.

4. The power to compel grading has not been conferred on the council. 22 Iowa, 254; 96 Mo. 622; 122 Ill. 465; 31 Ark. 462. Nor was it necessarily implied. Any doubt must be resolved against the power. 96 Mo. 622.

WOOD, J., (after stating the facts.) This court has sustained the act of 1885 as a proper delegation of the police power. *James* v. *Pine Bluff*, 49 Ark. 199. Therefore the only question for our consideration is, does the power "to build and maintain suitable pavement or sidewalk ·improvements" confer upon the city the power to require of the abutting owner such excavation as may be necessary to bring the sidewalk to the grade of the remainder of the street? The power to require grading not being granted in express terms, it should not be included by interpretation unless reasonably or necessarily implied. 1 Dill. Mun. Corp. sec. 89.

"Pavement" or "sidewalk improvements," as used in the act, are convertible terms. "A pavement is not limited to uniformly arranged masses of solid material, as blocks of wood, brick or stone, but it may be as well formed of pebbles or gravel or other hard substances which will make a compact, even, hard way or floor." *Burnham* v. *Chicago*, 24 Ill. 496. The term "sidewalk," as used in the ordinance, means the same as pavement as above defined. "Sidewalk," when used to designate a part of the highway, means that part of the street intended only for pedestrians, and is thus distinguished from that part of the street set apart especially for vehicles and horsemen. "Street" is the generic term for all parts of the way—the roadway, the gutters, and sidewalks. Elliott on Roads & Streets, p. 17.

By secs. 5141, 5209 of Sandels & Hill's Dig., "the care, supervision and control of streets" is given to the city council. They have power to lay off, open, widen, straighten and establish, to improve, keep open, and in repair, "to enter upon, or take for such of the above purposes as may be required, land or material, and to assess and collect a charge on the owner or owners of any lot or land, or on lots or lands through or by which a street * * * shall pass for the purpose of defraying the expenses of constructing, improving, repairing such streets, such charge to be in proportion to the value of such lot or land as assessed for taxation under the general law of the State." "To provide for the improvement of the streets, sidewalks, etc., they shall have power to direct and require that any or all male persons between the ages of eighteen and forty-five, residents of the city, shall be subject to street duty performable by work and labor in or upon the streets, sidewalks," etc. Sec. 5179, S. & H. Dig. See also, sec. 5321, *et seq.*, S. &. H. Dig., in regard to local improvement districts.

We think it clear that the removing of embankments and filling gulches for the whole of the street, including sidewalks, in order to conform to the established grade, is to be done under some of the above provisions. Abutting owners or occupants may be required only to lay sidewalk or pavement. This includes "all that is necessary, usual, or fit, for laying a pavement." 2 Dill. Mun. Corp. sec. 794. Mere surface grading, such as removing inequalities of the surface after the sidewalk has been brought to the general grade of the other part of the street, may be required; for a sidewalk of the kind prescribed could not be laid properly without smoothing and leveling the surface. But such a thing as cutting down hills and filling hollows—substantial grading—in our opinion is not included in the grant of power, and was never contemplated.

We are not without authority to support this conclusion. The legislature of Connecticut vested exclusive power in the court of common council of the city of New Haven to construct and maintain streets within its limits. The court of common council ordered proprietors on either side of a certain street to construct a sidewalk in front of their lands respectively. The charter of New Haven provided, among other things, for "the placing of a lien on the land of any proprietor of land or buildings fronting on any highway or street in the city who should neglect or refuse to perform the thing or things required by an order of the court of common council for the making, raising, grading, paving or flagging any sidewalk or gutter in said city adjacent to the said land or building in the manner and within the time specified in such order." A certain corporation, under the above order, proceeded to construct a sidewalk. Extensive repairs had to be made in a sea wall which supported the walk, before same could be properly laid. In a suit to recover for the cost of the repairs and walk, the supreme court

of Connecticut say : "Before a court of common council can legally require an owner abutting upon a street to construct a sidewalk in front of his premises, the city must construct the street for the entire width at the proper grade." *Pres. Yale College* v. *New Haven*, 17 Atl. 139. And, in a late case, where the plaintiff was seeking to set aside a lien claimed by the city for the expense of cutting down ten or twelve feet lower than the original grade of plaintiff's land, the contention was that, under the charter provisions, owners of abutting lands should be required to grade and construct sidewalks at their own expense. The court quoted the language used in the *Pres. Yale College* v. *New Haven*, *supra*, and reiterated with emphasis the doctrine there announced. *Hillhouse* v. *New Haven*, 26 Atl. 393.

A statute of Tennessee granted power "to regulate and construct sidewalks and foot pavements," the same as ours, and gave a lien on abutting lots for cost of same. The ordinance made it the duty of lot owners to construct good and substantial "sidewalk or foot pavement." In a suit seeking to enforce the lien for cost of pavement, including an amount for an "embankment or fill made in order to bring the grade of the sidewalk to the established grade of the street," Chancellor Cooper said : "It is obvious, in the case before us, that neither the law nor the ordinance contemplates any charge upon the owner of the lot beyond the cost of improvement." Only the cost of the sidewalk proper was allowed. *Smith* v. *St. Louis Mutual Life Ins. Co.* 3 Tenn. Ch. 631.

The cases cited by Judge Dillon in his second volume, at page 798, sec. 797, when critically examined in view of the statutes upon which they are based, we believe, will not discover any conflict with the opinion we have expressed. *Schenley* v. *Commonwealth*, 36 Pa. St. 29 ; *McNamara* v. *Estes*, 22 Ia. 246 ; *State* v. *Elizabeth*,

30 N. J. Law, 365. We should decline to follow them
if they were *contra*.

The act of 1885, on which the ordinance is founded,.
contravenes every principle of criminal jurisprudence in
giving power to cities to require the performance of an
act which in some instances may be impossible, and to
treat such failure as a criminal offense, and punish ac-
cordingly. In every case we have been able to find
upholding such legislation as a proper exercise of the
police power, the city has proceeded under the power by
civil proceedings, and not criminal. All the cases cited
by Judge Smith in *James* v. *James*, *supra*, are cases of
this kind. Generally it is sought to subject the prop-
erty for the cost of the improvement. But this act is.
highly penal ; also the ordinance, in that it seeks by
criminal process to subject the party failing or refusing
to the payment of a fine, and makes each day of such
failure or refusal a separate offense. We think the act
approaches the very verge of constitutional sanction.

The Supreme Court of Connecticut, in *Hillhouse* v.
*New Haven*, *supra*, uses this language : "Judge Cooley
says in his work on Constitutional Limitations :   'Lots.
above and below an established grade are usually less.
benefited than the others, because the improvements
subject them to new burdens in order to bring the gen-
eral surface to the grade of the street which the others.
escape.' So that, if the contention of the defendant.
were sanctioned,   *   *   *   he to whom the improve-
ments would be of the least benefit would be subjected.
to the greatest expense in making them." So we say in
the present case, if the city's contention could be main-
tained, the defendant, according to the proof, would.
have to cut down the sidewalk seven or eight feet to
bring it to the grade of the rest of the street ; while
those opposite him on Water street would have a deep
gulch to fill, requiring an embankment of earth twenty-

two feet wide at the base.    All this expense to the lot owners thus situated, in addition to the laying of the sidewalk, while their near neighbors on the same street, whose lots happen to be on the level of the grade established, have only the expense of laying the pavement. An ordinance which operates thus partially and unfairly would be unreasonable and void as to the locality thus affected, even if grading were included in its terms.  1 Dillon, Mun. Corp. sec. 322.

Since the legislature has not in express terms conferred the power to require grading, and since we do not find that it is fairly or necessarily implied in the power to "build and maintain sidewalks or pavements," we will not, by construction, say that they contemplated the laying of such unequal and oppressive burdens upon abutting property owners.  1 Dillon, Mun. Corp. sec. 321.

The judgment of the Pulaski circuit court is therefore affirmed.