City of Vicksburg et al v. Robinson.

[74 South. 617, Division B.]

1. MUNICIPAL CORPORATIONS. *Construction of sidewalks. Material.*
   *"Stone." "Concrete."*
   Under a city charter conferring power to provide for building of
   walks with stone, brick or wood, walks may be ordered built
   of "concrete," composed of gravel, Portland cement, and sand,
   since such material when laid and dried and hardened become
   equal in hardness and duration to natural stone, and may prop-
   erly be classed as stone within the meaning of the charter.

2. MUNICIPAL CORPORATIONS. *Sidewalks. Requiring owner to grade.*
   Under a city charter conferring general powers to provide for the
   construction of sidewalks and providing that before any person
   shall be required to lay a sidewalk, the city shall first establish
   a proper grade, the city has no power to require an abutting
   owner to fill in and raise the sidewalk at his own expense to the
   level of a paved street before laying the sidewalk.

APPEAL from the chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Bill by J. B. Robinson for an injunction against the
city of Vicksburg and another. From a decree making
the injunction perpetual and dismissing the city's cross-
bill, it appeals.

The facts are fully stated in the opinion of the court.

*Anderson, Vollor & Kelly,* for appellants.

It will be observed that while the charter only named
"stone, brick or wood" as a material for sidewalks, yet
the ordinance under which the sidewalk was built, pro-
vided for stone, brick, wood or other material." The
contention of counsel is that the terms, "or other mat-
erial," in the ordinance is not authorized by the charter
provision, and therefore is void. We say, on the author-
ity of some of the best courts in the land, that the build-
ing of sidewalks by a city is an exercise of its police

power, and that this power does not have to be delegated to it by the legislature. It is inherent in a municipality under its general welfare powers.

"In some jurisdictions the construction and maintenance of sidewalks at the cost of the abutting owners is regarded as an exercise of the police power." 4 Dillon on Municipal Corp. (5 Ed.), sec. 1442, p. 2563, and note 2; Also section 1438, p. 2542 and notes.

"But the more generally accepted rule is that a municipality in the exercise of its police power may order a lotowner to lay a sidewalk in front of his property, and upon his default may construct the same and charge the expense to him." 28 Cyc. 962 and note 61; also, page 1132 and note 21.

If that is true, it is not necessary for the city to have this specific authority from the city charter or Constitution to do this work, and the fact that we have a charter provision on this subject does not in any sense limit the general police power of the municipality along that line.

There is another proposition, however which we here submit that is worthy of consideration and that is that after the notice was served, but some month or two before the sidewalk was put down, the city charter was amended so as to authorize the mayor and aldermen to have sidewalks built of "concrete" or any other kind of material it might select. The terms of the amendment on this subject are as follows: "With stone, concrete, brick, wood or other material," so that at the time the sidewalk was built the charter specifically authorized the board to construct it out of concrete if it chose so to do.

We think that this is the only concrete proposition involved in the case, as the other one is merely an abstract or a moot question, which cuts no practical figure in the case at all.

However, we invite the court's attention to the second proposition relied upon by appellee, and that is, that part of the charter which provides as follows: "Before

any person shall be required to lay a new sidewalk the city shall grade the street itself at its own expense to the level so established or fixed by it. In other words, that the terms, "established the proper grades of such work," mean to establish the proper grades of the street and then to do the work necessary to bring the street to the point fixed or to the grade established.

We respectfully submit that the establishing of the proper grades of the work has nothing to do with the grade of the street. The grade of the street may never be established or fixed by the city, and indeed does not have to be before a man can be required to put down a sidewalk. It simply means that a grade for the work to be done shall be established so that the man may know where and how to do the work.

*Brunini, Hirsch & Griffith,* for appellee.

There is absolutely no legislative grant to the city of Vicksburg, to compel a property owner to bring the sidewalk to grade at his own expense. Article fourteen of the city charter, in reference to this subject is as follows:

"To provide for the building, renewing, or repairing of all sidewalks and gutters, with stone, brick or wood, at the expense of the property upon which the same may front." There is absolutely nothing said whatever which requires the property owner to reduce the sidewalk to grade.

The order of the board directs that Mr. Robinson shall be notified: "To bring said sidewalk to such established grade." 4 Dillon, Municipal Corporations, 2398; 28 Cyc. 962; 3 Dillon, Municipal Corporations, 1813; *Little Rock* v. *Fitzgerald,* 59 Ark. 494; 2 Dill. Mun. Corp., 794; *President, etc., of Yale College* v. *City of New Haven* (Conn.), 17 Atl. 139; *Hillhouse* v. *City of New Haven* (Conn.), 26 Atl. 393; *Smith* v. *Insurance Co.,* Tenn. Ch. 631; *Schenley* v. *Com.,* 36 Pa. St. 29; *McNamara* v. *Estes,*

22 Iowa, 246; *City of Little Rock* v. *Fitzgerald,* 28 S. W. 32.

We respectfully submit that the city was without authority to order Robinson to fill in the space for the sidewalk between the curbing and his building; the grade of the sidewalk, as determined by the curbing, having been raised at one point as much as four feet. This was a duty and obligation, which devolved upon the city itself.

Mr. Robinson had a right to remain quiescent until the city performed its precedent duty, and he could not be required to build a sidewalk until the space for the sidewalk had been brought to grade.

That the city had no power to compel Robinson to build a concrete sidewalk is supported by allegations in the bill.

The appellant, grasping at straws, asserts that the supreme court of Nebraska, has practically and in effect adopted the view for which it is contending. An examination of this case will show to the contrary. There was no such question passed upon in that case, as is involved in the case at bar. In that case, the charter provided: "That the sidewalk shall be laid and constructed of permanent material, such as brick, tiling, stone, artificial stone, macadam, slag, olithic or other like material, as may be ordered by the mayor and council."

The resolution directing the construction of the walks provided that they should be constructed of "stone or artificial stone." We quote from the opinion:

"The district court sustained the contention of the plaintiffs and enjoined the collection of the special assessments and taxes; the language of the decree being; 'For the reason that the city of Omaha, through its mayor and council failed to determine or designate the material of which the sidewalks should be constructed (that is, stone or artificial stone), but unlawfully delegated the power to designate and determine the material (that is, stone or artificial stone) to be used in said sidewalks to the board of Public works in the city.' "

Then follows the quotation found in appellant's brief, which plainly shows that the only question left to the board of public work was "to determine whether the stone so used should be natural or artificial."

This Nebraska case, *Richardson* v. *Omaha,* 104 N. W. 172, is not at all in support of appellant's position. The court simply held in that case that committing to the board of public works to determine whether stone, or artificial stone should be used did not amount to a delegation of the authority to determine of what material permanent walks shall be constructed. 4 Dill. Munc. Corp. (5 Ed.), secs. 1442 and 1438; 28 Cyc. 962 and 1132.

Had we the inclination to further prolong this brief, we should show to the court that the text in 28 Cyc. 962, to the effect that the more generally accepted rule is that a municipality in the exercise of its police power may require a property-owner at his expense to build a sidewalk in front of his property, is an incorrect statement, and we would show further by an analysis of the decisions quoted in support of the text in 28 Cyc. 962, that they are not as broad as the statement in Cyc. indicates. For instance, the case of the *City of Omaha* v. *Janesch* (Nebraska), 89 N. W. 280, shows that the city of Lincoln had granted to it a charter by the legislature, in which it was made the duty of all real estate owners to keep the sidewalk in good repair and free from snow and ice, etc., the validity of this provision was called in question. The court said: "that lotowners may be required by the legislature in the exercise of the police powers of the state to remove snow and ice from the adjacent streets. There would seem to be no very good reason why they may not also be required to remedy defects in adjacent sidewalks."

We now confidently submit that not only should this case be affirmed on the first two of our contentions, but upon this contention as well.

ETHRIDGE, J., delivered the opinion of the court.

B. J. Robinson filed a bill in the chancery court of Warren county against the city of Vicksburg and A. Kiersky, tax collector, alleging that complainant was the owner of a certain lot in said city, and that said lot fronts, or abuts, on the west side of Mulberry street in said city; and that the mayor and board of aldermen of the city of Vicksburg paved said Mulberry street, and in so doing changed the grade of said street; that thereafter the city gave notice to the complainant to construct a sidewalk fronting his property along said street from concrete composed of material specified in a notice given the complainant; that article 14 of the charter of Vicksburg, being a special charter, conferred power on the board of mayor and aldermen to provide for the building, renewing, or repair of all sidewalks and gutters with "stone, brick, or wood," and alleging that concrete was neither of these materials, and the city had no power to order a walk built of concrete. It was also alleged: That the charter provided, in the conclusion of the section referred to, that:

"Before any person shall be required to lay a new sidewalk the city shall first establish proper grades of such work" and the complainant contends that the city had not established said grade for the laying of said sidewalk in front of his property, either by reducing the street to an actual grade level, or by order entered on the minutes of the board of mayor and aldermen fixing each grade. That the city gave complainant notice to construct said sidewalk and to fill in and raise the street at his own expense up to the level of the paved street referred to. The complainant failed to comply with the notice and to construct said sidewalk, and to fill in to the required height of the road, and the city proceeded on its own account to raise the said street by filling in to a depth of three or four feet in front of the complainant's property and laying a sidewalk thereon, and then proceeded under its ordinance to advertise the complainant's property to

pay for said work. The bill also alleges that when the work was being done by the city the complainant asked that it be deferred until he could build a new building· on his property so as to put down a brick wall for the support of said sidewalk, and that he gave notice that the wooden wall was insufficient for that purpose, and would cause the walk to settle and crack and otherwise become out of repair. The bill alleges that, unless restrained, the city would proceed to sell his property to pay for the said expense for which complainant averred he was not liable. The city answered, admitting that it ordered said sidewalk built, and admitted that the surface of said street in front of complainant's property was raised in some places about three feet and admitted that it derived the power to do so from the city charter as alleged in the bill, and admitted serving notice on the complainant as shown in the exhibit to the bill. It admits that under the charter, before any person shall be required to lay a new sidewalk, the city shall first establish the proper grade for such work, but denied that the city had never· established the proper grade for the construction for said sidewalk, and alleged that the complainant had full knowledge of the establishment of said grade. It admits that the board of mayor and aldermen of the city of Vicksburg did not have power under its charter as it then existed to compel property owners to construct a sidewalk of any material that its caprice or whim might determine, but denied that it was limited to the materials of stone, brick, or wood, and alleged that the concrete named in the specifications to be used in the construction of the sidewalk in question was in fact stone, and better than brick or wood, and aver that the complainant failed and refused to pay for the building of the sidewalk, and made its answer a cross-bill, and asked for judgment for the cost of the work, ninety-eight dollars and twenty-five cents damages and twenty-seven dollars and twenty-five cents for cost of advertising the sale of the lot, etc., amounting to one hundred twenty-five dollars and fifty cents alto-

gether. The city admitted on the trial that it had never established the grade by any order entered on the minutes of the board of mayor and aldermen, and also admitted that it had not filled in nor brought the street on which the sidewalk was to be laid to the grade level claimed until it itself proceeded to construct the sidewalk. The city contends that it had the right to compel the owner to construct a sidewalk and make the proper fills at his own expense, and that the notice given the complainant required this to be done within twenty days after the service of the notice, or that in lieu thereof the complainant might permit the mayor and board of aldermen to construct it and pay one-fifth of the cost in cash and balance to be paid in one, two, three, and four notes, with interest at eight per cent., provided complainant would execute promissory notes and deliver to the city treasurer for the use of the city of Vicksburg. The chancellor made the injunction perpetual and dismissed the cross-bill from which judgment the city appeals.

The questions presented for decision are: First, as to whether concrete was in fact stone within the meaning of the charter provision existing at the time the notice was served upon the complainant; second, whether the city could require the complainant to fill in or grade down his lot at the expense of the private property owners as a part of the construction of the sidewalks; third, whether or not the grade of the sidewalk must be reduced to writing and entered upon the minutes of the board of mayor and aldermen.

We think that concrete made in accordance with the specifications shown in this record, being composed of gravel, Portland cement, and sand, when laid and dried and hardened become equal in hardness and durability to natural stone, and may properly be classed as stone within the meaning of the original charter amendment.

Under the second proposition we are of the opinion that the charter does not confer upon the mayor and aldermen the power to require grading down of lots or

the filling in of low places by the property owner at his own expense, but that this work must be done by the city so as to have the level of the street or sidewalk the same grade practically that the walk must be built upon.

In the case of the *City of Little Rock* v. *Edward Fitz- Gerald,* 59 Ark. 494, 28 S. W. 32, 28 L. R. A. 496, the supreme court of Arkansas held that the power to require the laying and construction of sidewalks at the expense of the property owner did not require the landowners to cut down and fill in lots at their own expense. The act in question there under consideration provided that, in order to better provide for the welfare, comfort, and convenience of the inhabitants, power was conferred on the city to regulate the use of sidewalks and all structures and excavations thereunder, and to require the owner or occupant of any premises to keep the sidewalks in front or alongside the same free from obstruction, and to build and maintain a suitable pavement or sidewalk improvements whenever the same may become necessary to the safety or convenience of travel, and to designate the kind of sidewalk improvement to be made and kind of material to be used by the owner or occupant and the time within which the improvement is to be completed, etc. The court held that this general power to require the property owner to construct and maintain sidewalks did not carry with it the power to require him to do the filling in and grading to bring the walk to the proper level of the street. Many authorities are cited in this case, and the monograph note appended to the L. R. A. report shows that this doctrine prevails generally, citing many cases. In our view this construction is sound. If the property owner can be required at all to cut down a lot and fill in depressions for the building of a sidewalk, the authority must be specifically conferred, and must not be implied as an incident to a general power. In the present case there was no opportunity for the complainant to build the sidewalk after the necessary fill had been made. The city had not brought the sidewalk to the proper grade

.levels, and the individual had no opportunity for building the walk after the city had made the necessary fill. The notice called upon him to do this work of filling in the depression himself, and the city cannot now say, after the injunction has been sued out, that it had not included this expense in its bill of costs charged against the complainant. It being true that there was no actual bringing of the street to grade level by the city prior to the giving of the notice, and it being admitted that no grade had been established by order entered on the minutes, it is unnecessary to decide in this suit whether an order establishing the grade must be made and entered on the minutes of the board where the city has brought the grade up to the level itself, and we think it a wise rule to refrain from deciding this proposition until it becomes necessary to do so. It would appear that the safer rule is for a city to enter its established grades on its minutes, so there could be no question about what the grade of the street was. It follows from what we have said that the chancellor was right, and the judgment is affirmed.

*Affirmed.*